HARRISON CLARK AND WIFE, CHARITY POOLE CLARK, v. R. C. CAGLE AND WIFE, DONNIE POOLE CAGLE.

(Filed 10 April, 1946.)

**1. Appeal and Error § 40d—**

Findings of fact by a referee approved by the trial judge cannot be reviewed on appeal if supported by any competent evidence.

**2. Boundaries § 10—**

In this reference to determine the location of the boundary lines of plaintiffs' land *it is held* there was sufficient evidence to support the referee's findings as to the location of the boundaries, and the lower court

properly overruled defendants' exception to the refusal of the referee to grant their motion for judgment as of nonsuit.

**3. Reference § 9—**

Exceptions to the rulings of the referee must be brought forward in order for them to be presented for determination by the judge.

**4. Boundaries § 5g—**

Where plaintiffs' title as heirs at law is admitted, leaving only the question of locating the boundaries for determination, the referee properly admits in evidence the record in the partition proceeding to show that land in dispute was carved out of the lands partitioned, some of which boundaries were coincidental with the boundaries to the *locus in quo* claimed by plaintiffs.

**5. Appeal and Error § 29—**

An exception which is not referred to in the brief or argument is deemed abandoned. Rule 28.

**6. Appeal and Error § 14—**

Where appeal entries are noted at the time of the signing of final judgment, the trial court is without authority at a subsequent term, and within the time allowed for service of case on appeal, to set aside the judgment and substitute another except by consent, and upon objection a substituted judgment not consented to must be stricken out.

**7. Costs § 6—**

After decision of the Supreme Court modifying and affirming a judgment of the Superior Court on appeal from the referee, allowances constituting items of costs may be adjusted as provided by G. S., 6-7.

APPEAL by defendants from *Phillips, J.,* at October Term, 1945, of MONTGOMERY. Modified and affirmed.

This action was instituted in 1941 to restrain defendants from cutting timber on plaintiffs' 30-acre tract of land.

The plaintiff Charity Poole Clark is one of the heirs of H. P. Poole, deceased. At the time of his death H. P. Poole owned three tracts of land, containing respectively (1) $7\frac{1}{8}$ acres, (2) 64 acres, and (3) 60 acres. The 64-acre tract has no relation to this controversy and may be disregarded. After the death of H. P. Poole in 1927 his lands were partitioned among his heirs and to plaintiff Charity Poole Clark was allotted therefrom a tract of 30 acres, described as follows:

"Lot No. 4. Beginning on a stake formerly a corner by poplar on the old Morganton Road and runs thence N. 17 E. 4 poles to a stone pile on South side of the highway; thence with its various courses N. 80 W. 12 P. N. 85 W. 8 P. S. 86 W. 8 P. S. 79 W. 28 poles to a stake in a line of Lot No. 3; thence with its line reverse S. 20 W. 73 poles to its corner stone pile in the old line; thence with its S. 53 E. 26 poles to a

pine corner of the 7⅛-acre tract; thence with its line S. 40 W. 19 poles to its corner stake; also Cagle's corner; thence with its other line reverse N. 76½ S. (S. 76½ E.) 41½ poles to its other corner stake by pine; with and beyond its other line North about 17½ E. 104 poles to the beginning, containing 30 acres more or less."

This tract embraced the 7⅛-acre tract, and plaintiffs claim it was the eastern portion of the 60-acre tract.

At April Term, 1942, a consent judgment was entered in the cause wherein the defendants disclaimed any interest in either of the three tracts referred to, and it was adjudged that Charity Poole Clark and other heirs at law of H. P. Poole were owners in fee of said lands, and it was ordered that a survey be made of these lands to determine the location of same. The lands were described in the judgment as follows:

"First Tract: Beginning on a stake by post oak and pine, old corner of the 100-acre tract, and runs with its line reverse S. 37 E. 23 poles to a stake dogwood pts. in S. J. Smitherman's line; thence with his line S. 19 W. 30 poles to his corner; with his other line N. 76½ W. 41½ poles to a stake in the old 100-acre tract; thence with its line reverse N. 40 E. 52½ poles to the beginning, containing 7⅛ acres, more or less.

. . .

"Third Tract: Beginning at a stake by a twin pine red oak pts. Jon Bruton's fourth corner of his seventy-five-acre entry and runs with his line N. 45 E. 44 poles to his corner post oak on the North side of the Morganton Road; thence with said road 95 to Angush Martin's line; thence with his line S. 10 W. 100 poles to a stake in the old field; thence with his other line N. 80 W. 100 poles to Caldwell Poole's line; thence with his line to the beginning, containing 60 acres more or less."

No report of survey having been made, at September Term, 1944, the court appointed two surveyors to make the survey, and, as the only question remaining was one of boundary, appointed R. L. Brown, Esq., referee to determine the true location of the boundary lines of the described lands.

On the hearing before the referee plaintiffs offered in evidence the special proceeding for partition showing the allotment to the plaintiff from the lands of H. P. Poole, lot #4 containing 30 acres described as hereinbefore set out. Plaintiffs offered oral testimony as to the location of the boundary lines of the 30-acre tract. J. M. Furr, one of the surveyors, testified in substance that the boundaries of the 30-acre tract, according to plaintiffs' contention, were laid down on the map with beginning point, the northeast corner of the tract, indicated by the letter F, and that the eastern boundary line was represented by the letters F to G; the southern line from G to M; thence northeast to point "4" in the line of the 7⅛-acre tract; thence westwardly to point "T"; thence

northwardly, constituting the western boundary of the tract, to a point in the old Morganton Road designated by the letter "R"; thence for the northern boundary, along the said road to the beginning F. It was also testified by this witness that according to the survey of the 60-acre tract as laid down on the map the northwest corner of the tract on the old Morganton Road was indicated by the figure "2," and that the call thence was along said road 95 (poles) to Angus Martin's line; that if plaintiffs' contention as to the location of "2" be accepted the distance of 95 poles east along the road would give out 410 feet (24.8 poles) before reaching point F; that on the ground at the point marked F on the map there is a stump and stone; that the 30-acre tract as represented on the map is within the 60-acre tract, the eastern line F to G being the east line of the 30-acre tract.

Witness J. C. McIntyre testified that he was son-in-law of H. P. Poole, executor of his will, and a party to the partition proceeding in which the 30-acre tract was laid off and allotted to plaintiff Charity Poole Clark; that he had known these lands for more than 40 years, and was familiar with the 30-acre tract; that it is the east boundary of the 60-acre tract; that letter F is one of the corners of the 30-acre tract. "The old deed has S 10 W 100 poles to W(G) on this map; thence N. 76½ W 41½ poles that is at M; . . . thence N 40 E 16½ poles to figure '4'; thence N 52 W 26 poles. . . . The 30-acre tract goes back to the Morganton road. It goes 4 poles out to the next (new) highway in (to) the stake in the line in the third tract in the division; thence back to the stump F on the map." This witness testified he had seen H. P. Poole cultivating the 7⅛-acre tract—had seen this tract of land cultivated 30 years or more. "What is shown on the map as the beginning corner of the 30-acre tract is point F, then it goes to G, then to M, then to 4, to T, to R (on Morganton Road), then back to a stone on the highway, point F on the map." He further testified that these were the boundaries of the 30-acre tract. He also testified that on the line between the points marked F and G there was at one time a rail fence and H. P. Poole had put up a wire fence; that between the points marked G and M were sweetgum trees and a wire fence; between M and "4" a persimmon tree; between "4" and T, now cleared, "I saw this line in the new division (the partition) in 1926 and in 1936." Between the points indicated by letters T and R on the map "is a well marked line." "The Morganton road is the last line of the 30-acre tract." "There were some marks on the line from F to G." He said plaintiffs did not claim south of the line 4 to T. It was admitted that the 7⅛ acres belonged to plaintiffs and it was not controverted it was correctly located.

The defendants offered no evidence, but moved for judgment as of nonsuit, on the ground that plaintiffs had failed to offer sufficient evi-

dence of the location of the 30-acre tract. The motion was denied except in so far as it related to plaintiffs' claim for damages—none having been shown.

The referee reported findings of fact and conclusions of law in favor of plaintiffs, determining the location of the boundary lines of plaintiffs' land. Defendants excepted to each of the findings and conclusions. On the hearing in the Superior Court, the trial judge overruled defendants' exceptions, and approved and confirmed the findings of fact and conclusions of law as reported by the referee. Judgment was rendered restraining defendants from cutting timber on plaintiffs' land as described and located by the referee.

Defendants excepted and appealed to this Court.

*M. E. Bolton and Ehringhaus & Ehringhaus for plaintiffs, appellees.*
*Bob V. Howell and J. A. Spence for defendants, appellants.*

DEVIN, J. The defendants assign as error the ruling of the trial judge in approving and confirming the denial by the referee of their motion for judgment of nonsuit. It was contended that plaintiffs had not offered sufficient evidence to locate the 30-acre tract of land on which it was alleged the defendants had trespassed.

The action, which had been originally instituted to restrain timber cutting on plaintiffs' land, had resulted in a consent judgment establishing the plaintiffs' title, as heirs of H. P. Poole, to the three tracts of land described in the judgment from which the 30-acre tract had been cut off and allotted to the *feme* plaintiff in the partition of the lands of H. P. Poole, thus leaving open only the question of determining the location of the 30-acre tract.

The question of title was thus adjudicated. Only the question of locating the boundaries remained. The referee to whom the matter was referred found and reported what he concluded were the true boundary lines and determined the location of the land described. The trial judge has approved and confirmed.

It is the established rule that findings of fact by a referee approved by the trial judge cannot be reviewed on appeal if supported by any competent evidence. *Anderson v. McRae,* 211 N. C., 197, 189 S. E., 639; *Dent v. Mica Co.,* 212 N. C., 241, 193 S. E., 165; *Holder v. Mortgage Co.,* 214 N. C., 128, 198 S. E., 589.

The defendants' appeal presents the question whether there was any competent evidence to support the referee's findings as to the location of the boundary lines of the described 30-acre tract of land.

We note that the defendants admit the title to the 7⅛-acre tract and do not controvert its location. It would seem from the description of the

lands in the partition proceeding and in the judgment heretofore rendered that the 30-acre tract was cut off from the larger 60-acre tract, and that some of the lines of the 30-acre tract coincide with those of the 7⅛-acre tract and are so connected therewith as to indicate that the 7⅛-acre tract was included in and constituted the southern end of the 30-acre tract. From the testimony of a witness who said he had known these lands for many years, it appears that the boundary lines of the 30-acre tract are visible and well defined; that the northern boundary is the Morganton Road; that the eastern and southern boundaries were denoted by fences erected by H. P. Poole; that the western boundary was a well marked line; that the witness had seen the line at the time of the partition (to which he was a party) when the 30-acre tract was cut off and allotted to the plaintiff. The presence of a stump and stone at the northeast corner of the land was in evidence.

We observe also that in the partition of the lands of H. P. Poole in 1927 the 30-acre tract allotted to the plaintiff is described as beginning at a poplar and stone pile on the Morganton Road, and running thence westwardly along the old Morganton Road by various courses 56 poles, thence southwardly 73 poles to a stone; thence eastwardly 26 poles to a corner in the line of the 7⅛-acre tract; thence with its line southwest 19 poles to its corner; thence eastwardly with its line 41½ poles to its other corner; thence with and beyond its other line north about 17½ degrees east 104 poles to the beginning.

It is apparent from these descriptions that within the boundary lines of the 30-acre tract and at its southern end is located the 7⅛-acre tract. A portion of the west line of the 30-acre tract coincides with the west line of the 7⅛-acre tract; the south line of the 30-acre tract is the south line of the 7⅛-acre tract; and the east line of the 30-acre tract follows the east line of the 7⅛-acre tract as far as the latter extends, and then continues by the same course to the beginning on the old Morganton Road.

While the western boundaries of the larger 60-acre tract were not definitely pointed out by the testimony, it does appear that the northern boundary is the old Morganton Road, and that the eastern boundary, extending southward from a point on this road, was denoted by a fence— originally a rail fence and later a wire fence erected by H. P. Poole— on the line now indicated on the map by the letters F to G; and that likewise the southern boundary was evidenced by a wire fence and trees on the line now indicated on the map as G to M. From this the reasonable inference is deducible, as testified by the witness McIntyre that the 30-acre tract is the "east boundary of the old tract of land the 60-acre tract." Thus the testimony tends to locate the lines of the eastern por-

tion of the 60-acre tract which was cut off into the 30-acre tract so as to include the *locus in quo*.

Again, the description of the 60-acre tract in the deed to H. P. Poole, designates the north line as extending eastward along the Morganton Road 95 (poles) to Angus Martin's line; thence his line south ten degrees west 100 poles, with the next line running westwardly. While no evidence was offered as to the location of Angus Martin's line, this description indicates that Angus Martin's land lay to the east, and that the line running south from the Morganton Road was both the eastern boundary of the 60-acre tract and the dividing line between the lands of H. P. Poole and Angus Martin; and it was along this line (now indicated on the map by the letters F to G) that H. P. Poole erected a wire fence to replace a previously existing rail fence.

We think the plaintiffs have offered some competent evidence to determine the boundaries and locate the plaintiffs' land as found by the referee and approved by the judge. Hence the motion for judgment of nonsuit was properly denied.

At the time of the taking of the testimony before the referee, the defendants noted exceptions to the ruling of the referee in the admission of certain testimony, but in their exceptions to the report of the referee none of these were brought forward, so they could be ruled upon by the judge, except that relating to the admission of the record of the special proceeding for partition. *Pack v. Katzin*, 215 N. C., 233, 1 S. E. (2d), 566; *Anderson v. McRae*, 211 N. C., 197, 189 S. E., 639. The exception brought forward was properly overruled, for the reason that the title of the plaintiffs, as heirs of H. P. Poole, to the three tracts of land having been admitted, it was competent to offer the record of this proceeding to show that the 30-acre tract was carved out of these lands and allotted to the plaintiffs. Furthermore, this exception seems to have been abandoned as it was not referred to in brief or argument (Rule 28).

Defendants bring forward in their assignments of error exception to the action of the trial judge in attempting at a subsequent term of the Superior Court of Montgomery County to set aside the judgment previously rendered by him, and to substitute therefor another judgment, because of some inadvertence in the first. As the record shows final judgment in the cause was signed 3 October, and at the same time entries of appeal to this Court were noted, the judge was without power at a subsequent term (29 October), and within the time allowed for service of case on appeal, to set aside the judgment and substitute another, unless by consent. *Likas v. Lackey*, 186 N. C., 398, 119 S. E., 763; *Lawrence v. Lawrence, ante,* 221. Notice of the judge's intention to set aside the first judgment and substitute another was given informally shortly before the subsequent term began, but defendants did not

appear or consent, and excepted to the action of the judge. Though it appears that the only change in the judgment was in the matter of certain allowances and not as to the merits, the exception now presented on this appeal must be sustained. The substituted judgment will be stricken out, and the original judgment affirmed. Allowances constituting items of costs may be adjusted as provided by G. S., 6-7.

Modified and affirmed.