WILLIAM SAMUEL BAKER, JR., v. L. R. VARSER, CHAIRMAN, AND GEORGE B. GREENE, KINGSLAND VAN WINKLE, L. T. HARTSELL, JR., BUXTON MIDYETTE, JOHN H. HALL AND THOMAS H. LEATH, ALL MEMBERS OF THE BOARD OF LAW EXAMINERS OF THE STATE OF NORTH CAROLINA, AND THE BOARD OF LAW EXAMINERS OF THE STATE OF NORTH CAROLINA.

(Filed 15 January, 1954.)

**1. Courts § 2—**

Where the court is without jurisdiction to enter an order, the order is a nullity.

**2. Appeal and Error § 1—**

The jurisdiction of the Supreme Court is derivative.

**3. Judges § 2a—**

The jurisdiction of a regular judge of the Superior Court over the subject matter of an action depends upon the authority granted to him by the Constitution and the laws of this State, and is fundamental.

**4. Courts § 2: Appeal and Error § 6c (1)—**

Objection to the jurisdiction may be made at any time during the progress of an action, and, even in the absence of objection, the court will take cognizance thereof *ex mero motu.*

**5. Evidence § 2—**

The courts will take judicial notice as to the residence of a regular Superior Court judge and the district to which he is assigned by rotation and whether he was assigned at any particular time to hold court in a particular district.

**6. Same—**

The courts will take judicial notice that a particular county is located in a particular judicial district.

**7. Same—**

The courts will take judicial notice as to the county in which a municipality of this State is situate.

**8. Judges § 2a—**

A regular judge of the Superior Court while assigned by rotation to hold the courts of the judicial district of his residence has no jurisdiction to hear a petition for *mandamus* in Chambers in another judicial district to which he is not assigned to hold court. Constitution of N. C., Art. IV, sec. 2; Art. IV, sec. 10; Art. IV, sec. 11; G.S. 7-65; G.S. 7-74.

**9. Mandamus § 1: Administrative Law § 6: Attorney and Client § 2:—**

*Mandamus* will not lie to review final action of the Board of Law Examiners, an administrative agency of the State, in refusing an application for permission to take the law examination, since *mandamus* is an exercise of original jurisdiction and may not be used as a substitute for an appeal.

**10. Administrative Law § 6—**

If there is no provision for appeal from an order of an administrative agency of the State the proper method for review is by *certiorari*.

**11. Administrative Law § 6—**

The courts will not review or reverse the exercise of discretionary power by an administrative agency except upon a showing of capricious, unreasonable or arbitrary action, or disregard of law.

**12. Same: Attorney and Client § 2:  Mandamus § 5—**

Where in an action for *mandamus*, the complaint liberally construed is sufficient to allege that the Board of Law Examiners, in denying plaintiff's application to take the law examination, acted in misapprehension as to what is in law "residence" within the purview of its rule, the applicant is entitled to have the Board act in the light of the true meaning of the term, and rather than dismiss the action, the complaint may be considered as an application for a writ of *certiorari*.

APPEAL by defendants from *Harris, J.,* in Chambers at Wilmington, N. C., on 3 August, 1953, and 5 August, 1953.

Petition for *mandamus,*—requiring defendants, Board of Law Examiners of the State of North Carolina, to permit plaintiff to receive the examination to be given applicants for admission to practice law in North Carolina in the city of Raleigh, on 4, 5 and 6 August, 1953.

The record on this appeal shows:

1. That summons in this action issued out of Superior Court of New Hanover County, North Carolina, on 3 August, 1953, and was served 3 and 4 August, 1953.

2. That on 3 August, 1953, plaintiff filed a complaint in this action in which these allegations appear:

(1) "That the plaintiff is a citizen and resident of the county of New Hanover and State of North Carolina."

(2) That the defendants L. R. Varser, Chairman, and six other persons, naming them, are members of and constitute the Board of Law Examiners of the State of North Carolina,—"duly elected and qualified" . . . pursuant to the provisions of Article 4 of Chapter 84 of the General Statutes of North Carolina, 1943, as amended, and pursuant to the Rules, Regulations, Organization and Ethics of the North Carolina State Bar, which were duly promulgated and adopted in accordance with the provisions of "said article as amended."  And "that the Board of Law Examiners of the State of North Carolina is the agency of the State of North Carolina duly authorized and empowered to conduct, and charged with the duty of conducting the examination of applicants for admission to practice law in the State of North Carolina."

"(3) That sometime prior to June 15, 1953, plaintiff filed with the Board of Law Examiners of the State of North Carolina his application

for admission to practice law in the State of North Carolina to be held in the City of Raleigh, North Carolina, on August 4, 5, 6, 1953, which said application was in due form and complied fully with the rules and regulations of said Board of Law Examiners.

"(4) The Secretary of said Board of Law Examiners having questioned plaintiff's residence and citizenship in North Carolina for a period of one year next preceding the date of filing application for admission to practice law in North Carolina, which is a condition precedent to the right to stand the examination for admission to practice law in the State of North Carolina, plaintiff requested the said Board of Law Examiners in writing to grant him a hearing, and on July 25, 1953, plaintiff was granted a hearing with respect to his residence and citizenship, at which time plaintiff testified to all of the essential facts concerning his residence and citizenship in North Carolina, and submitted himself to said Board for examination with respect thereto, which facts are hereinafter set forth.

"(5) That after said hearing the Board of Law Examiners, on July 27, 1953, through its Secretary, rejected plaintiff's application for permission to take said examination in a letter which reads as follows: 'The Board of Law Examiners instructed me to advise you that your application for admission to the examinations in August, 1953, has been rejected as you failed to satisfy the Board as to your citizenship and residence as contemplated under Rule 5. We return to you herewith refund in the amount of $22.00 as contemplated under the rules of the Board.'

"(6) Rule 5 of the Rules Governing Admission to Practice of Law (North Carolina General Statutes, 1943, Vol. 4, page 65) in part provides: 'Each applicant at the time of filing his application, must be a citizen of the United States, a person of good moral character, and must have been, for the twelve months next preceding the filing of his application, a citizen and resident of North Carolina. . . . He must be at least 21 years of age at the time of filing his application, or of such an age that he will become 21 within twelve months next after filing his application, provided that no license shall actually issue to any person until he has reached the age of 21.'

"(6) That, notwithstanding the fact that plaintiff has met all of the requirements of law and furnished to the defendants plenary evidence of the fact that he is a citizen of the United States and is and has been a citizen and resident of the State of North Carolina for more than twelve months next preceding the time of the filing of his application, the defendants have unreasonably, arbitrarily and erroneously refused and still refuse to permit plaintiff to stand said examination, and unless the Court shall, in the exercise of its extraordinary equitable jurisdiction, grant immediate relief to plaintiff and the defendants are ordered and directed by this Court to permit plaintiff to take said examination, plaintiff will

be denied his right to do so, in violation of the Constitution of the State of North Carolina and the Fourteenth Amendment to the Constitution of the United States."

(7) "That the facts with respect to plaintiff's resident and citizenship are as follows: That plaintiff was born in Charleston, S. C., on the 5th day of January, 1925, and lived with his parents in the States. of South Carolina, Alabama, Georgia and Florida, and on the first day of February, 1945, when Plaintiff was twenty years of age, his parents removed from Augusta, Georgia, to Wilmington, North Carolina, where his parents have since continuously resided." Then there is set forth in chronological order details of his movements, associations and presence in connection with various places, and engagements, culminating with this: "Plaintiff, since removing to Wilmington, N. C., with his parents during his minority, has never acquired citizenship in any other State than North Carolina. Plaintiff has never had a domicile other than that of his parents and has never had any intention of changing his domicile from that of his parents in Wilmington, N. C., to any other place, and his presence in the City of Washington, D. C., for a predetermined fixed period was due to the exigencies of his employment by the Government."

"(8) There will not be another examination of applicants for admission to practice law until the first Tuesday in August, 1954, and if plaintiff is deprived of the right to take the examination to be given on August 4, 5 and 6, 1953, a year will elapse before he can apply for examination again, and he will thereby suffer irreparable injury and is without adequate remedy at law, and if plaintiff practices his chosen profession and enters into the practice of law, he would be forced to return to South Carolina for the better part of a year, or to enter government service for the better part of a year, in either of which events he would again be faced with the unfavorable attitude of the Board of Law Examiners with respect to his residence and citizenship in North Carolina.

"(9) That the General Assembly of 1953 passed an Act (Chapter 1012, Session Laws, 1953) amendatory of Section 84-24 of the General Statutes of North Carolina, which provides that appeals may be had from the rulings of the defendants in accordance with rules or procedures promulgated by the defendants and approved by the Supreme Court, which said Act was ratified April 24, 1953, and since the ratification of said Act such rules or procedures have not been promulgated, and therefore no means have been provided pursuant to said Act whereby preliminary questions as to the eligibility of an applicant for admission to the Bar in North Carolina can be judicially determined in such manner that the rights of a citizen and resident of North Carolina may not be prejudiced.

"Wherefore, plaintiff prays that the court enter an order herein directing the defendants to permit the plaintiff to receive the examination to be

given applicants for admission to practice law in North Carolina in the City of Raleigh, N. C., on August 4, 5, and 6, 1953, with the understanding and agreement that, in the event the plaintiff shall successfully pass such examination, and the defendants are still of the opinion that plaintiff is not a citizen and resident of North Carolina, his license to practice law in the State of North Carolina may be withheld until the question as to such residence and citizenship shall have been determined by the courts in a manner favorable to the plaintiff."

Thereupon, on 3 August, 1953, at Wilmington, North Carolina, the Honorable W. C. Harris, "Judge of the Superior Courts of North Carolina, entered and signed" an order worded as follows:

"This cause coming on to be heard before the undersigned Judge of the Superior Courts of North Carolina upon the duly verified complaint of the plaintiff, and being heard, and it appearing to the court that if the relief prayed is not granted plaintiff will suffer irreparable injury and that plaintiff is without adequate remedy at law, and it further appearing to the court that no harm can be suffered by the defendants by the granting of the relief prayed by the plaintiff:

"Now, Therefore, It is ordered and adjudged, in the exercise of the extraordinary equitable jurisdiction of the court, that the defendants be, and they are hereby directed to permit the plaintiff to stand the examination to be given applicants for admission to practice law in North Carolina in the City of Raleigh, North Carolina, on August 4, 5, and 6, 1953, and that, in the event the plaintiff shall successfully pass such examination, and the defendants are still of the opinion that plaintiff is not a citizen and resident of North Carolina, his license to practice law in the State of North Carolina may be withheld until the question as to such residence and citizenship shall have been determined by the courts in a manner favorable to the plaintiff."

Thereafter on 5 August, 1953, defendants excepted to the above order of Harris, J., entered as above set forth for that, among numerous other grounds, Judge Harris was "without jurisdiction and power to enter same," and "for that, upon the complaint itself, the plaintiff was not entitled to the relief sought and the order obtained."

And on 7 August, 1953, a copy of these exceptions was served upon the attorney for plaintiff by sheriff of Wake County, N. C.

And on 5 August, 1953, defendants made motion before Harris, J., that the order entered by him on 3 August, 1953, be revoked and vacated for that:

"(a) The plaintiff has failed to comply with the rules and regulations of the defendant Board relating to residence requirements; and

"(b) The plaintiff has been given a full, fair and impartial hearing before the defendant Board which Board has found that the plaintiff has

not complied with other rules and regulations duly adopted relating to applicants for admission to practice law in North Carolina; and

"(c) The plaintiff can suffer no irreparable injury by completing his residence requirements in the State of North Carolina and by complying with all other rules and regulations as is required of all other applicants; and

"(d) The order grants the entire relief as requested by the plaintiff in his complaint with the defendants not being served with notice prior to the signing thereof and the said order was entered before service of summons and complaint and without notice and opportunity to be heard; and

"(e) Said order was erroneously entered without jurisdiction and power to enter same, there being no jurisdiction conferred on the court over this action since Chapter 1012 of the 1953 Session Laws takes the Board of Law Examiners of North Carolina out from under the provision of Chapter 1094 of the 1953 Session Laws; and

"(f) The plaintiff has not exhausted his administrative remedies as provided by Chapter 1012 of the 1953 Session Laws."

This motion was denied by Judge Harris on the same day. And to the refusal of the Judge to allow the motion to vacate, and to sign an order vacating and dissolving the order entered on 3 August, 1953, defendants object, and excepted.

Defendants appeal to Supreme Court of North Carolina, and assign error.

*R. P. Upchurch for plaintiff, appellee.*
*Bennett H. Perry for defendants, appellants.*

WINBORNE, J. While appellants present on this appeal numerous other assignments of error, decision here turns upon the one based on exceptions to the orders involved, on the ground that, at the time and under the existing situation, Judge Harris did not have jurisdiction to enter them. If he did not have such jurisdiction, and it is held that he did not, his action in signing the orders is in law a nullity, and must be so declared. For the jurisdiction of the Supreme Court is derivative. *Shepard v. Leonard,* 223 N.C. 110, 25 S.E. 2d 445.

The jurisdiction of a regular judge of the Superior Court over the subject matter of an action depends upon the authority granted to him by the Constitution and laws of the State, and is fundamental. McIntosh's N. C. P. & P. 7; *Stafford v. Gallops,* 123 N.C. 19, 31 S.E. 265. And objection to such jurisdiction may be made at any time during the progress of the action. This principle is enunciated and applied in a long line of decisions in this State. See *Henderson County v. Smyth,* 216 N.C. 421, 5 S.E. 2d 136, where prior cases are listed, including *Burroughs v.*

*McNeill,* 22 N.C. 297, and *Branch v. Houston,* 44 N.C. 85. See also *Lewis v. Harris,* 238 N.C. 642, 78 S.E. 2d 715, and cases cited; also *Spaugh v. City of Charlotte, ante,* 149.

In *Burroughs v. McNeill, supra,* it is stated, in opinion by *Gaston, J.,* that: "The instant that the court perceives that it is exercising, or is about to exercise, a forbidden or ungranted power, it ought to stay its action, and, if it does not, such action is, in law, a nullity."

And to like effect is *Branch v. Houston, supra,* where *Pearson, J.,* wrote: "If there be a defect, *e.g.,* a total want of jurisdiction apparent upon the face of the proceedings, the court will of its own motion, 'stay, quash, or dismiss' the suit. This is necessary to prevent the court from being forced into an act of usurpation, and compelled to give a void judgment . . . So, *ex necessitate,* the court may, on plea, suggestion, motion, or *ex mero motu,* where the defect is apparent, stop the proceedings."

In this connection the Court will take judicial notice of the fact that at the time of the signing of the orders in question, the Honorable W. C. Harris was the regularly elected judge of, and by rotation was assigned to hold the terms of the Superior Court of the Seventh Judicial District in the eastern division of North Carolina; that he was not then assigned to hold any term of Superior Court, regular or special, in New Hanover, or any other county, in the Eighth Judicial District in the eastern division of North Carolina; and that New Hanover County, in which this action was instituted, is located in the Eighth Judicial District aforesaid. General Statutes, Chap. 7, sub-chapter II, Article 7. *Greene v. Stadiem,* 197 N.C. 472, 149 S.E. 685.

And the record on this appeal discloses the fact that the orders in question were signed "at chambers . . . at Wilmington, N. C." In this respect the Court will take notice of the fact, also, that Wilmington, North Carolina, is situated in the county of New Hanover.

In this situation, did Judge Harris have jurisdiction to entertain a petition for,.and to grant a writ of *mandamus* in the instant action? The Constitution and laws of North Carolina say "No."

The Constitution of North Carolina declares: That the judicial power of the State, other than a court for the trial of impeachments, a Supreme Court, courts of justices of the peace, and such other courts inferior to the Supreme Court as may be established by law, shall be vested in Superior Courts. Art. IV, Sec. 2.

In respect to "Judicial Districts for Superior Courts," the Constitution, Art. IV, Sec. 10, declares that "The General Assembly shall divide the State into a number of judicial districts . . . and shall provide for the election of one or more Superior Court judges for each district"; and that "There shall be a Superior Court in each county at least twice in each year . . ."

And in respect to "Judicial Districts: Rotation . . . Assignment of Superior Court Judges by Chief Justice," the Constitution, Art. IV, Sec. 11, declares that "Each judge of the Superior Court shall reside in the district for which he is elected"; that "the General Assembly may divide the State into a number of judicial divisions"; that "the judges shall preside in the courts of the different districts within a division successively; but no judge shall hold all the courts in the same district oftener than once in four years"; and that "The Chief Justice, when in his opinion the public interest so requires, may assign any Superior Court judge to hold one or more terms of Superior Court in any district."

These provisions of the Constitution have been implemented by enactments of the General Assembly: (1) dividing the State into twenty-one judicial districts for each of which a judge shall be chosen in the manner provided by law, G.S. 7-40; (2) numbering the districts first to twenty-first, composed of designated counties respectively, G.S. 7-68; (3) dividing the State into two judicial divisions, the Eastern and Western Judicial Divisions,—the counties included in judicial districts from one to ten, both inclusive, to constitute the Eastern Division, and those in judicial districts from eleven to twenty-one, both inclusive, to constitute the Western Division, G.S. 7-69; (4) directing that the judges of the Superior Court shall hold the courts of the several judicial districts successively, according to a specified order and system—the judges resident in the Eastern Judicial Division to hold the courts in that division, and the judges in the Western Judicial Division to hold the courts in that division, for spring and fall terms successively,—the judge riding any spring circuit to hold all the courts which fall between January and June, both inclusive, and the judge riding any fall circuit to hold all the courts which fall between July and December, both inclusive, G.S. 7-74; also *West v. Woolworth Co.,* 214 N.C. 214, 198 S.E. 659; and (5) requiring that every judge of the Superior Court shall reside in the district for which he is elected; that the judges shall preside in the courts of the different district successively, but no judge shall hold the courts in the same district oftener than once in four years; and that the *Chief Justice,* when in his opinion the public interest so requires, may assign any Superior Court judge to hold one or more terms of Superior Court in any district. G.S. 7-46, as amended by 1951 Session Laws, Chap. 471, Sec. 2.

Moreover, the General Assembly in respect to "Jurisdiction in vacation or at term" amended G.S. 7-65 to read as follows: "In all cases where the Superior Court in vacation has jurisdiction, and all of the parties unite in the proceedings, they may apply for relief to the Superior Court in vacation, or in term time, at their election. The resident judge of the judicial district and any special Superior Court judge residing in the

district and the judge regularly presiding over the courts of the district, shall have concurrent jurisdiction in all matters and proceedings where the Superior Court has jurisdiction out of term; Provided, that in all matters and proceedings, not requiring the intervention of a jury or in which trial by jury has been waived, the resident judge of the judicial district and any special Superior Court judge residing in the district shall have concurrent jurisdiction with the judge holding the courts of the district, and the resident judge and any special Superior Court judge residing in the district, in the exercise of such concurrent jurisdiction, may hear and pass upon such matters and proceedings, in vacation, out of term, or in term time . . ."

Thus it is manifest that under the statute relating to rotation of judges, G.S. 7-74, a regular Superior Court judge assigned to a district is the judge of that district for six months beginning 1 January, or 1 July as the case may be, *Hamilton v. Icard,* 112 N.C. 589, 17 S.E. 519, and *Reidsville v. Slade,* 224 N.C. 48, 29 S.E. 2d 215, and within such period, has jurisdiction of all "in chambers" matters arising in the district, but that such jurisdiction is limited to such matters. See *Shepard v. Leonard, supra.*

In this *Shepard case,* speaking to the subject, *Barnhill, J.,* has stated: "It may be said that a regular judge holding the courts of the district has general jurisdiction of all 'in chambers' matters arising in the district . . . The general 'vacation' or 'in chambers' jurisdiction of a regular judge arises out of his general authority. Usually it may be exercised anywhere in the district and it is never dependent upon and does not arise out of the fact that he is at the time presiding over a designated term of court or in a particular county. As to him, it is limited, ordinarily, to the district to which he is assigned by statute. It may not be exercised even within the district of his residence except when specially authorized by statute," citing *Ward v. Agrillo,* 194 N.C. 321, 139 S.E. 451, and *Howard v. Coach Co.,* 211 N.C. 329, 190 S.E. 478.

Too, it may be noted that G.S. 7-65, thereafter amended, gives concurrent jurisdiction as hereinabove shown. But the jurisdiction is not extended beyond the limits of the district. Hence the fact that Judge Harris, at the time here involved, was both the regular judge holding the courts of, and the resident judge of the Seventh Judicial District did not enlarge his jurisdiction. Rather, under such circumstances, his jurisdiction "in vacation" and "in chambers" was limited to matters arising only in the Seventh Judicial District.

It is contended, however, that under the provisions of G.S. 1-493 judges of the Superior Court have jurisdiction to grant injunctions and restraining orders in all civil actions and proceedings. True enough! But we are here dealing with *mandamus,* and not with injunctions or restraining orders.

Here the Board of Law Examiners, an administrative agency of the State of North Carolina, had taken final action on a matter within its jurisdiction. Plaintiff, being dissatisfied with the ruling of the Board, made after hearing, seeks a judicial review, and a reversal of the action so taken by the Board. For this purpose, *"mandamus* is not a proper instrument,"* as stated by this Court in opinion by *Seawell, J.,* in *Warren v. Maxwell,* 223 N.C. 604, 27 S.E. 2d 721, citing *Pue v. Hood, Commr. of Banks,* 222 N.C. 310, 22 S.E. 2d 896. In the *Pue case,* opinion by *Barnhill, J.,* it is said that: "The issuance of a writ of *mandamus* is an exercise of original and not appellate jurisdiction . . . and is never used as a substitute for an appeal."

Moreover, in the *Warren case, supra,* it is said: "If there has been an error in law, prejudicial to the parties, or the board has exceeded its authority, or has mistaken its power, or has abused its discretion—where the statute provides no appeal—the proper method of review is by *certiorari,"* citing numerous cases.

So, if it be conceded that there was in effect no provision for an appeal from the Board of Law Examiners, the statute, G.S. 1-269, provides that writ of *certiorari* is authorized as heretofore in use.

In this connection the Court will not review or reverse the exercise of discretionary power by an administrative agency except upon a showing of capricious, unreasonable or arbitrary action, or disregard of law. See *Utilities Com. v. Ray,* 236 N.C. 692, 73 S.E. 2d 870, opinion by *Denny, J.*

When tested by this rule the complaint of plaintiff, liberally interpreted, seems to allege that the Board of Law Examiners in considering the question of his residence within the State for twelve months, acted in misapprehension of what is in law "residence" within the purview of rule five governing admission to the practice of law in the State of North Carolina. If that be true, he would be entitled to have the Board act in the light of the true meaning of the term. *McGill v. Lumberton,* 215 N.C. 752, 3 S.E. 2d 324, and numerous cases cited in Shepard's N. C. Citations of headnote 3 of the *McGill case.*

Hence, rather than to dismiss the action, it is deemed proper that the complaint may be considered an application to the Superior Court for a writ of *certiorari* to the end that the record of pertinent proceeding in respect to question of rule applied in determining residence of plaintiff within the State in connection with his application for bar examination, may be judicially reviewed.

Hence the orders from which appeal is taken are hereby reversed, and the proceeding is remanded to Superior Court for further consideration in the light of this opinion.

Reversed and remanded.