STATE OF NORTH CAROLINA v. FRANKLIN JUNIOR SAULTS

No. 78

(Filed 1 February 1980)

1. **Criminal Law § 131.2— motion for new trial for newly discovered evidence — remand for determination of pertinent facts**

    In a hearing on a motion for a new trial for newly discovered evidence by a defendant who was convicted at his second trial of accessory before the fact of arson, the court's findings did not support its conclusion that defendant was not entitled to a new trial because he had knowledge or by the use of reasonable diligence should have had knowledge of all the facts and circumstances alleged in his motion for a new trial, and the matter is remanded for a determination as to whether (1) defendant, either before or during his second trial, in fact talked to two officers whose testimony would tend to discredit the story related by the State's witnesses, and (2) he had sufficient information so that he should have talked to them at some time before the end of his second trial.

2. **Judgments § 2.1— judgment out of term and out of county — absence of consent**

    Trial court's order denying defendant's motion for a new trial for newly discovered evidence was null and void where it was entered out of term, out of session, out of county and out of the district in which the hearing was held, and it does not appear that the parties consented thereto.

    Justice BROCK dissenting.

    Chief Justice BRANCH and Justice HUSKINS join in the dissenting opinion.

ON appeal of this MITCHELL County case which was heard, by consent of the parties, before *Kirby, J.* at the 5 June 1978 Session of WATAUGA County Superior Court.

Defendant was tried before Ferrell, J. at the 30 August 1976 Criminal Session of Mitchell County Superior Court for the crime of being an accessory before the fact to arson. This bill of indictment does not appear in the record.

The principal State's witness was Jackie Lee Parker. He testified that he met with the defendant around noon on 29 November 1975. At that meeting, defendant hired him to burn the home of Ola Mae Yelton. Parker testified that no one else was with him when he met with the defendant. Defendant gave him two one gallon jugs, a siphon hose and a pair of gloves. Parker siphoned the gas to start the fire from a car belonging to Doris

Hoilman. Two girls drove him close to the Yelton house and put him out around 11 p.m. He then walked up to the Yelton house and started the fire.

Ola Mae Yelton testified that she was awakened between 11 and 11:30 p.m. by a loud burst of noise. She saw flames at the front door of her home. The home was occupied by Mrs. Yelton; her two sons, J. L. and Ballard Yelton; and J. L. Yelton's wife, Pamela. Her two sons extinguished the fire with a garden hose. Chief Deputy of Mitchell County, Larry Cox, testified that he investigated the fire on 30 Novmeber 1975 and found "some charring of a porch" and he found that a wooden door had been burned. The jury was unable to reach a verdict and a mistrial was declared.

An indictment, proper in form, was returned for the same offense on 18 July 1977 and the case came on for trial before Howell, J. at the 22 July 1977 Criminal Session of Mitchell County Superior Court.

Parker testified at this trial that when he met with the defendant around noon on 29 November 1975, defendant picked him up at the White Oak Trailer Park. Parker rode with the defendant and Parker's girlfriend, Judy Hoilman, and her sister, Doris Hoilman, followed them in Doris Hoilman's car. He further testified that Judy and Doris Hoilman drove him to the Yelton home on that evening when he set the fire and that he rode back from the Yelton house with the Hoilman sisters.

Judy Hoilman's testimony substantially corroborated Parker's testimony. On rebuttal for the State, Doris Hoilman testified concerning the meeting at noon between Parker and the defendant and on cross-examination she testified that the noon meeting was all that she knew "about this whole thing."

The jury found the defendant guilty and he was given a life sentence. Upon his appeal from his conviction and sentence, this Court found no error in the trial and the verdict and judgment were affirmed. *State v. Saults*, 294 N.C. 722, 242 S.E. 2d 801 (1978).

On 1 June 1978, defendant moved for a new trial on the basis of newly discovered evidence pursuant to G.S. 15-174 (which was repealed and replaced by G.S. 15A-1415(b)(6) effective 1 July 1978)

and G.S. 1A-1, Rule 60(b)(2). He filed several affidavits in support of his motion.

Bill Pennix and Stokes Bailey each stated in their affidavit that they were policemen with the Town of Bakersville and that they were on patrol together on the evening of 29 November 1975. They stopped a 1964 Chevrolet automobile on N.C. Highway 226 near its intersection with White Oak Road between 10 p.m. and midnight. The operator and sole occupant of the car, whom they both believe was Jackie Lee Parker, jumped out and ran. While they were searching the car, Dora Hoilman and her two daughters, Judy and Doris Hoilman, who lived nearby, walked up and demanded possession of the car. A license tag check by Officer Pennix revealed that the car was registered to Doris Hoilman.

Freddie Ollis and Ruth Ollis filed affidavits in which they stated that they are next door neighbors to the Hoilman family. On 29 November 1975, they overheard Dora, Judy and Doris Hoilman arguing and then the three Hoilman women walked down White Oak Road toward N.C. Highway 226. The Ollises stated that Jackie Lee Parker was not in the presence of Judy and Doris Hoilman around 11 p.m. that evening and they did not see Parker at the Hoilman residence or in the presence of the Hoilman women at any time on 29 November 1975.

At the hearing on the motion for a new trial, Judge Kirby received the affidavits into evidence and heard testimony from Officer Bailey and defendant's wife. On 16 October 1978, he entered an order in which he made findings of fact and concluded that the defendant was not entitled to a new trial.

Other facts necessary to the decision of this case will be discussed in the opinion.

*Goldsmith and Goldsmith by Frank Goldsmith, Jr. for the defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Douglas A. Johnston for the State.*

COPELAND, Justice.

[1] Defendant contends that the findings of fact made by the trial judge do not support his conclusion of law. We agree.

Findings of fact are binding and are conclusive on appeal when they are supported by competent evidence. *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1972); *State v. Hedgebeth*, 228 N.C. 259, 45 S.E. 2d 563 (1947), *cert. dismissed*, 334 U.S. 806 (1948). The findings of fact must support and justify the conclusion of law. *State, ex rel. Glamorgan Pipe and Foundry Co. v. Benfield*, 266 N.C. 342, 145 S.E. 2d 912 (1966).

Here, Judge Kirby's findings of fact number 3, 4 and 5 are: (3) Parker testified during the first trial that he siphoned gas from a 1964 Chevrolet owned by Doris Hoilman; (4) Parker testified during the first trial that he rode near the residence of J. L. Yelton with "these two girls"; and (5) "the defendant could easily have known the identification of the said two witnesses having been present during both trials." These findings do not support the conclusion that defendant is not entitled to a new trial because he "either had knowledge of or by use of reasonable diligence, should have had knowledge of all the facts and circumstances alleged in his Motion for New Trial, as being newly discovered evidence" and "[t]hat defendant calculated not to make use of the said evidence at his second trial on July 18, 1977 . . . ."

The identities of those two women are not of critical importance to the defendant. It is reasonable to assume that if defendant had interviewed them before the second trial, their statements to him would have been substantially the same as their testimony at the second trial.

The critcial evidence that defendant contends is newly discovered is the statement from Officer Pennix and from Officer Bailey that they stopped a car registered to Doris Hoilman at approximately 11 p.m. on 29 November 1975; that there was only one person in the car; that they believe that person to have been Parker; and that the Hoilman sisters and their mother then came down the road and demanded possession of Doris Hoilman's car. If defendant had talked to either of those officers before the conclusion of the second trial, then he would have developed evidence tending to establish a very different story from that revealed by Parker and the Hoilman sisters at the second trial. This evidence from Bailey, Pennix and the Ollises tends to establish that the Hoilman sisters were not with Parker on the evening of 29 November 1975 and may not have been with him earlier on that

day. The importance of discovering any evidence tending to destroy the testimony of the Hoilman sisters takes on much greater importance after considering the prior history of this case. Without the testimony of the Hoilman sisters, the first trial ended with a hung jury. With their testimony, the second trial ended with a conviction and a life sentence for the defendant.

Reduced to its simplest terms, the issue is whether (1) defendant in fact talked to Officers Bailey or Pennix before or during the second trial and (2) whether he had sufficient information so that he *should have talked* to them some time before the end of the second trial. If the answer to either part of the above issue is "yes," then defendant has no newly discovered evidence.

First, the trial judge found that the defendant talked to Officer Bailey during the first trial and told him that he overheard a radio broadcast on his police scanner on the evening of 29 November 1975 that the officers had stopped a car and "the rabbit had run again."

From the record, it is clear that all of the questioning of Officer Bailey on this issue concerned whether the conversation between defendant and Officer Bailey first occurred during or only after the *second* trial. At first, Bailey equivocated in his answers to this question, but he then stated that he was out of town during the second trial. In response to direct questioning from defense counsel and later from the trial judge, Bailey said that his first conversation with defendant was the week after his second trial while defendant was in jail waiting to be transported to Central Prison. There is no evidence to support the finding that defendant talked to Bailey about overhearing the radio message during the first trial, or for that matter, during the second trial. All of the evidence reveals that the first conversation about this matter occurred the week after the second trial.

Second, both Bailey and Pennix were employed at that time as police officers by the Town of Bakersville. The entire arson investigation was handled by the Mitchell County Sheriff's Department so there was no reason the defendant should have talked to Bailey or Pennix about the crime for which he had been charged unless the defendant had some additional reason to believe that those officers had relevant information that could aid him in his defense.

There is evidence in the record that defendant overheard a radio message on 29 November 1975 that the two officers had stopped a car and the "rabbit had run again." There is no evidence in the record that defendant overheard the license tag check revealing that the car was registered to Doris Hoilman. Therefore, the issue is when did defendant first realize who the officers were referring to when it was stated that the "rabbit had run again." If he knew who they were referring to at the time he overheard the radio message on 29 November 1975, then he should have talked to the two officers before his conviction at the second trial. If he was first able to understand the reference to "the rabbit" only after the second trial as a result of chance conversations with police officers, then he has come into possession of newly discovered evidence.

Officer Bailey testified that:

"Yes, he knew who the rabbit was, who I was referring to. He knew I was talking about Parker, the person (sic) had given testimony against him at his trial. He told me he knew that because he heard the conversation himself, with his own ears. *On May 9, [1978]* he told me, 'you remember stopping Jackie Parker driving Doris' car that night and you referred to him as the rabbit's run again?' " (Emphasis added.)

This evidence does not shed any light on the question of when the defendant first became aware of who the officers were referring to as "the rabbit." The above evidence simply shows that he had discovered who they were talking about as of 9 May 1978. Therefore, this evidence is insufficient to support finding of fact number 6 that the defendant knew on 29 November 1975 that *Jackie Lee Parker* had been stopped by police officers. When the evidence is insufficient to support a finding of fact, the case must be remanded for a new hearing. *State v. Robinson,* 248 N.C. 282, 103 S.E. 2d 376 (1958); *State v. Davis,* 243 N.C. 754, 92 S.E. 2d 177 (1956).

Finally, we note *ex mero motu* that we may take judicial notice of the assignments of trial judges to hold court, of the counties that make up a certain district and of the resident district of a superior court judge. *Baker v. Varser,* 239 N.C. 180, 79 S.E. 2d 757 (1954). Therefore, we take judicial notice of the following: During the Spring Term, 1978, Judge Kirby was assigned to the

Twenty-First District and was assigned to hold the 5 June 1978 Criminal Session of Watauga County Superior Court. During the Fall Term, 1978, he was assigned to the Schedule B session in District 27 and was assigned to hold the 16 October 1978 Criminal Session of Gaston County Superior Court. Judge Kirby is the senior resident superior court judge in district 27-A.

[2]   Judge Kirby held this hearing in Watauga County during the 5 June 1978 Criminal Session of court rather than in Mitchell County where the crime occurred and where both trials were held because the parties consented to have the hearing held in Watauga County. There is nothing in the record to indicate that the parties consented to have the order entered out of term, out of session, out of county and out of district from where the hearing was held when, on 16 October 1978, he entered his order in this case while he was holding court in Gaston County. We hold that the order entered in this case is null and void since it was entered out of term and out of session. *See, Baker v. Varser, supra,* where it was held that a trial judge cannot hear a matter *and* enter an order out of term and out of session, and *Clark v. Cagle,* 226 N.C. 230, 37 S.E. 2d 672 (1946), where it was held that after final judgment has been entered and an appeal noted (but the time allowed for service of case on appeal has not run), the trial judge cannot enter a substitute judgment *at a subsequent term except by consent.*

For all of the above reasons defendant is entitled to a new hearing. Since we are awarding a new hearing, it is premature for us to resolve defendant's second contention that the trial judge abused his discretion in refusing to order a new trial. At the new hearing, it must be determined whether defendant in fact has newly discovered evidence and if so, whether that evidence, in the trial judge's sound discretion, warrants a new trial. *State v. Beaver,* 291 N.C. 137, 229 S.E. 2d 179 (1976).

New hearing.

Justice BROCK dissenting.

I respectfully dissent from the analysis and holding of the majority opinion and I vote to uphold the order of Judge Kirby

denying defendant's motion for a new trial on grounds of newly discovered evidence.

The majority opinion places considerable stress on the fact that Judge Kirby found that defendant talked to Officer Bailey during the first trial concerning the defendant's having overheard the police radio broadcast on the evening of 29 November 1975 that the officers had stopped a car and the "rabbit had run again." The majority stresses that this finding of fact by Judge Kirby is not supported by the evidence because from the evidence it appears that the defendant first talked to Officer Bailey about the radio broadcast after the second trial. To me, this finding of fact by Judge Kirby is immaterial to the real question involved. The real question is whether the defendant had sufficient information prior to the second trial to impose upon him a reasonable duty to talk to Officer Bailey prior to the second trial.

At the hearing of the motion for the new trial, Officer Bailey testified as follows:

"Yes, he knew who the rabbit was, who I was referring to. He knew I was talking about Parker, the person (sic) had given testimony against him at his trial. He told me he knew that because he heard the conversation himself, with his own ears. On May 9, [1978] he told me, 'you remember stopping Jackie Parker driving Doris' car that night and you referred to him as the rabbit's run again?'"

It is clear from the above testimony that defendant heard the police radio broadcast on 29 November 1975, which was prior to his indictment in this case. When the defendant did talk to Officer Bailey, at whatever time his conversation with Officer Bailey may have been, he asked the Officer, "you remember stopping Jackie Parker driving Doris' car that night and you referred to him as the rabbit's run again?" It seems quite clear that the defendant knew at all times from having heard the police radio broadcast on 29 November 1975 that Officer Bailey had stopped Jackie Parker and that Jackie Parker was driving Doris Hoilman's automobile. In my view this should have caused the defendant to talk with Officer Bailey prior to the second trial.

The majority also declare Judge Kirby's order null and void because there was no showing in the record that the parties con-

sented to have the order entered out of term, out of session, out of county and out of district from where the hearing was held. The defendant does not raise any question about this and it seems obvious to me that the entry by Judge Kirby of the order at a later time and out of the district was verbally or tactitly agreed to by the parties and does not render it null and void.

It is not unusual that a judge would want the court reporter to transcribe the testimony at the hearing in order that he would have an opportunity to review it before entering his order. To me this is obviously what Judge Kirby wanted in this situation. His discussion with the attorneys involved is not a matter of record but it seems clear to me, since the defendant does not now raise the question, that the parties agreed that Judge Kirby should have time to study the transcript and that he might enter such order at such time and place after he had time to study the transcript. In my view *Baker v. Varser*, 239 N.C. 180, 79 S.E. 2d 757 (1954) and *Clark v. Cagle*, 226 N.C. 230, 37 S.E. 2d 672 (1946) have no application to the facts or the law of this case.

I vote to uphold the order of Judge Kirby.

Chief Justice BRANCH and Justice HUSKINS join in this dissent.