STATE OF NORTH CAROLINA v. BILLY RAY BROWN, Defendant

No. COA04-316

(Filed 7 June 2005)

**1. Appeal and Error— denial of post-conviction DNA testing—no statutory right of appeal**

There is no statutory right to appeal from a grant or denial of a motion for post-conviction DNA testing.

**2. Appeal and Error— denial of post-conviction DNA testing—writ of certiorari**

The Court of Appeals had no authority to allow defendant's petition for a writ of certiorari from the denial of post-conviction DNA testing. These motions cannot be treated as motions for appropriate relief, which would allow review by certiorari, because they do not involve the grounds specified by N.C.G.S. § 15A-1415(b). Review under Rule 21 of the Rules of Appellate Procedure is also not available.

**3. Appeal and Error— denial of post-conviction DNA testing—appellate review to prevent manifest injustice—denied**

Review of the denial of defendant's motion for post-conviction DNA testing under Appellate Rule 2 was declined because it was not necessary to prevent manifest injustice, and the Court of Appeals declined to exercise its discretion.

Appeal by defendant from order entered 17 December 2003 by Judge W. Russell Duke, Jr. in Beaufort County Superior Court. Heard in the Court of Appeals 10 January 2005.

**STATE v. BROWN**

[170 N.C. App. 601 (2005)]

*Attorney General Roy Cooper, by Special Deputy Attorney General William P. Hart, for the State.*

*McCotter, Ashton & Smith, P.A., by Rudolph A. Ashton, III, for defendant-appellant.*

GEER, Judge.

Defendant Billy Ray Brown appeals from the trial court's denial of his motion for post-conviction DNA testing under N.C. Gen. Stat. § 15A-269 (2003). The State has argued that the appeal must be dismissed because the statute does not provide for appellate review and because review by writ of certiorari is unavailable. We agree and, accordingly, dismiss defendant's appeal.

Facts and Procedural History

On 25 September 2000, defendant, a former assistant principal at a middle school, was indicted for attempted second degree rape of a former student, R.T. Defendant was convicted on that charge on 15 November 2001, and Judge Thomas D. Haigwood sentenced him to a presumptive sentence of 58 months to 79 months imprisonment. Defendant did not timely notice appeal, but on 24 April 2002, defendant filed a petition for writ of certiorari in this Court, seeking a belated appeal based upon ineffective assistance of counsel. This Court allowed the belated appeal and subsequently upheld defendant's conviction and sentence. *State v. Brown*, 163 N.C. App. 784, 595 S.E.2d 238 (2004) (unpublished). A full account of the facts are set forth in that opinion.

The facts pertinent to this appeal are as follows. On 11 September 2000, R.T. was at home with her two-year old son. At approximately 2:30 p.m., defendant knocked at R.T.'s door. After defendant entered R.T.'s home, he asked to use her bathroom. When he returned from the bathroom, he made various sexually-related remarks and rubbed his penis through his shorts in front of R.T., causing R.T. to ask defendant to leave. Defendant then asked to use the bathroom a second time, and R.T. attempted to call her father while defendant was in the bathroom. Defendant, however, knocked the phone out of her hand and pushed her against a kitchen bar with his body. He attempted to kiss R.T., ripped her t-shirt open, fondled her breasts, and then threw her to the floor. He struck R.T. in the face, unfastened her jeans, and pulled out his penis. R.T. testified that she never actually saw his penis, but she felt it pressing against her stomach. When R.T. kicked defendant between his legs, defendant got up, banged his

head against a lamp, and ran out of the apartment while pulling his shorts up.

Defendant admitted at trial that he had been in R.T.'s house, but testified that they had simply had a conversation. He denied engaging in any of the sexual conduct to which R.T. testified. Specifically, defendant denied ever trying to kiss R.T., ripping her shirt, touching her breasts, throwing her to the ground, unfastening her pants, or rubbing and exposing his penis to her.

On 15 November 2001—the same day that the jury found defendant guilty of attempted second degree rape—Judge Haigwood signed an "Order for Disposition of Physical Evidence." In the order, the court directed that certain items of evidence—an orange t-shirt and a pair of black jeans—should be returned to R.T. or disposed of in accordance with the law. On 26 December 2001, after defendant had failed to appeal his conviction, the shirt and jeans were turned over to Velvet Blizzard of the Washington Police Department.

On 23 April 2002—a day prior to filing his petition for writ of certiorari—defendant filed a *pro se* motion seeking DNA testing pursuant to N.C. Gen. Stat. § 15A-269. Defendant requested that the court order DNA testing of (1) a torn blouse, (2) a pair of pants, (3) "[l]adies undergarment," (4) nail clippings and hair samples, and (5) any other similar evidence from the crime that might be unknown to defendant. Despite defendant's motion and unbeknownst to defendant, the t-shirt and jeans were destroyed by the police on 13 August 2002 after R.T. indicated that she did not want them returned.

Counsel was appointed on 13 September 2002 to represent defendant in connection with his motion for post-conviction DNA testing. That motion was heard before Judge W. Russell Duke, Jr. on 4 September 2003. At the hearing, defendant and his counsel learned for the first time that R.T.'s t-shirt and jeans had already been destroyed. During the hearing, Detective Steve Waters of the Washington Police Department testified that he had inspected the clothing at issue on the night of the incident and had found no evidence of any kind of bodily fluid transfer. He, therefore, did not order any DNA testing prior to the trial of defendant. Additionally, Waters testified that he never obtained any undergarments from R.T. or any nail clippings or hair samples.

On 17 December 2003, the trial court denied defendant's motion for post-conviction DNA testing. In its order, the court found that Detective Waters, who was experienced in handling biological evi-

dence, had examined the victim herself and the clothing she wore during the assault and did not observe any stains or other indication that bodily fluids had been transferred. The court also found that no nail or skin scrapings were collected from either the defendant or the victim because Detective Waters did not observe any scratches or skin irritations. Finally, the court found that the undergarments were never removed from the victim during the commission of the crime. Based upon these findings, the trial court determined that there was "no evidence that any biological evidence was transferred from the Defendant to the victim or the crime scene" and "no evidence that any biological evidence ·exists from which DNA testing could be conducted." The court concluded that the destruction of the t-shirt and jeans by the Washington Police Department was not done in bad faith and did not prejudice the defendant because there was no evidence that showed biological evidence existed on the clothing.

On 22 December 2003, defendant filed a notice of appeal from the trial court's order. In its appellee brief, the State argued that defendant does not have a right to appeal the trial court's denial of his motion for DNA testing. On 4 January 2005, defendant filed an "Alternative Application to Treat Appeal as a Petition for Writ of Certiorari."

## Discussion

### A. The Right to Post-Conviction DNA Testing

[1] In 2001, the General Assembly enacted "An Act to Assist an Innocent Person Charged With or Wrongly Convicted of a Criminal Offense in Establishing the Person's Innocence." 2001 N.C. Sess. Laws 282 (hereinafter "the Act"). Under this Act, a criminal defendant, as of 13 July 2001, has a right of access before trial to (1) any DNA analyses performed in connection with his case and (2) "[a]ny biological material, that has not been DNA tested, that was collected from the crime scene, the defendant's residence or the defendant's property." N.C. Gen. Stat. § 15A-267(a) (2003). Additionally, effective 1 October 2001, "a governmental entity that collects evidence containing DNA in the course of a criminal investigation shall preserve a sample of the evidence collected for the period of time a defendant convicted of a felony is incarcerated in connection with that case." N.C. Gen. Stat. § 15A-268(a) (2003).[1] The sample may be disposed of earlier only

1. This provision applies to evidence, records, and samples in the government's possession on or after the effective date of 1 October 2001. 2001 N.C. Sess. Laws 282, s. 6.

upon fulfillment of certain conditions, including notification of the defendant and defendant's counsel. N.C. Gen. Stat. § 15A-268(b).

Also effective 1 October 2001, following conviction, a defendant "may make a motion before the trial court that entered the judgment of conviction against the defendant for performance of DNA testing of any biological evidence . . . ." N.C. Gen. Stat. § 15A-269(a). In order to obtain "DNA testing of any biological evidence," the defendant must show that the evidence (1) is material, (2) is related to the investigation or prosecution, and (3) was not previously DNA tested or, if it was tested, current DNA testing would provide results that are significantly more accurate or would have a reasonable probability of contradicting prior test results. *Id.* The trial court shall grant a motion for post-conviction DNA testing (1) when the conditions set forth in N.C. Gen. Stat. § 15A-269(a) are met and (2) "there exists a reasonable probability that the verdict would have been more favorable to the defendant" if the DNA testing being requested had been conducted. N.C. Gen. Stat. § 15A-269(b).

If a motion for post-conviction DNA testing under N.C. Gen. Stat. § 15A-269 is allowed, the court shall, upon receiving the results of the testing, "conduct a hearing to evaluate the results and to determine if the results are unfavorable or favorable to the defendant." N.C. Gen. Stat. § 15A-270(a) (2003). If the results are not favorable, then the court shall dismiss the motion. N.C. Gen. Stat. § 15A-270(b). If, however, the results are favorable, then the court shall enter an order that "serves the interests of justice" and may (1) vacate and set aside the judgment, (2) discharge the defendant, (3) resentence the defendant, or (4) grant a new trial. N.C. Gen. Stat. § 15A-270(c).

B. The Right to Appeal

In its brief, the State argues that there is no right to appeal the denial of a motion for post-conviction DNA testing. "The right to appeal in a criminal proceeding is purely statutory." *State v. Shoff,* 118 N.C. App. 724, 725, 456 S.E.2d 875, 876 (1995), *aff'd per curiam on other grounds,* 342 N.C. 638, 466 S.E.2d 277 (1996). Further, Rule 4(a) of the Rules of Appellate Procedure provides that the appellate courts have jurisdiction over an appeal by "[a]ny party *entitled by law* to appeal from a judgment or order of a superior or district court rendered in a criminal action . . . ." N.C.R. App. P. 4(a) (emphasis added). The first question is, therefore, whether any statute authorizes an appeal of the denial of defendant's motion for post-conviction DNA testing.

There is no language in N.C. Gen. Stat. § 15A-269 or § 15A-270 that allows an appeal as of right from a grant or denial of a motion for post-conviction DNA testing. Indeed, there is no language addressing appellate review at all. In 2001, the General Assembly simply did not address the issue of appellate review in the Act and has not amended the legislation since to provide review.

Nor do any other statutes governing criminal proceedings provide a right to appeal in cases such as this one. Generally, the right to appeal in criminal cases is set out in N.C. Gen. Stat. § 15A-1444 (2003). Under that statute, a defendant who pleads not guilty at trial may appeal the judgment itself as a matter of right. N.C. Gen. Stat. § 15A-1444(a). In addition, a defendant who was found guilty or who pled guilty or no contest has the right to appeal the following issues:

> (1) whether the sentence is supported by the evidence (if the minimum term of imprisonment does not fall within the presumptive range); (2) whether the sentence results from an incorrect finding of the defendant's prior record level under N.C. Gen.Stat. § 15A-1340.14 or the defendant's prior conviction level under N.C. Gen.Stat. § 15A-1340.21; (3) whether the sentence constitutes a type of sentence not authorized by N.C. Gen. Stat. § 15A-1340.17 or § 15A-1340.23 for the defendant's class of offense and prior record or conviction level; (4) whether the trial court improperly denied the defendant's motion to suppress; and (5) whether the trial court improperly denied the defendant's motion to withdraw his guilty plea.

*State v. Carter*, 167 N.C. App. 582, 584, 605 S.E.2d 676, 678 (2004). In addition, N.C. Gen. Stat. § 15A-1432(d) (2003) allows a defendant, under certain circumstances, to appeal on an interlocutory basis a superior court's order reinstating criminal charges after a district court dismissal. Defendant's appeal does not fall within any of these categories of appeal.

Defendant does not point to any other statute specifically authorizing appeal from the order below, but argues that his appeal is permissible under N.C. Gen. Stat. § 7A-27(b) (2003). N.C. Gen. Stat. § 7A-27(b) allows an appeal "[f]rom any final judgment of a superior court." A denial of a motion for post-conviction DNA testing does not, however, constitute a "final judgment" as defined in criminal proceedings. Under N.C. Gen. Stat. § 15A-101(4a) (2003), judgment is defined as "when sentence is pronounced." *See also Berman v.*

*United States*, 302 U.S. 211, 212, 82 L. Ed. 204, 204, 58 S. Ct. 164, 165 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."). The order below does not involve the pronouncement of a sentence.

Accordingly, there is no statutory right of appeal to this Court from a grant or denial of a motion for post-conviction DNA testing. We, therefore, turn to consideration of defendant's alternative petition for writ of certiorari.

## C. Petition for Writ of Certiorari

[2] In support of his petition for writ of certiorari, defendant first argues that motions for post-conviction DNA testing should be treated as motions for appropriate relief, which would allow us to review the trial court's order pursuant to N.C. Gen. Stat. § 15A-1422(c)(3) (2003). That statute provides that review of an order denying a motion for appropriate relief is by writ of certiorari "[i]f the time for appeal has expired and no appeal is pending . . . ." *Id.*

Defendant's motion for post-conviction DNA testing cannot, however, be deemed a motion for appropriate relief. N.C. Gen. Stat. § 15A-1415(b) (2003) sets forth "the only grounds which the defendant may assert by a motion for appropriate relief made more than 10 days after entry of judgment." In addition, N.C. Gen. Stat. § 15A-1415(c) provides that "a defendant at any time after verdict may by a motion for appropriate relief, raise the ground that evidence is available which was unknown or unavailable to the defendant at the time of trial, which could not with due diligence have been discovered or made available at that time . . . ." Defendant acknowledges that his motion does not involve any of the grounds specified in N.C. Gen. Stat. § 15A-1415(b) or (c). It cannot, therefore, be considered a motion for appropriate relief.

Review is also not available under Rule 21 of the North Carolina Rules of Appellate Procedure:

[T]his Court is limited to issuing a writ of certiorari "in appropriate circumstances . . . to permit review of the judgments and orders of trial tribunals when [1] the right to prosecute an appeal has been lost by failure to take timely action, or [2] when no right of appeal from an interlocutory order exists, or [3] for review pursuant to G.S. 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief."

*State v. Pimental*, 153 N.C. App. 69, 76-77, 568 S.E.2d 867, 872 (quoting N.C.R. App. P. 21(a)(1)), *disc. review denied*, 356 N.C. 442, 573 S.E.2d 163 (2002). In addition, under *State v. Bolinger*, 320 N.C. 596, 601-02, 359 S.E.2d 459, 462 (1987), a defendant may petition for writ of certiorari when challenging the procedures followed in accepting a guilty plea. *State v. Niccum*, 293 N.C. 276, 278, 238 S.E.2d 141, 143 (1977) also permits a petition for writ of certiorari upon denial of a petition for writ of habeas corpus.

In this case, seeking review of the DNA testing order, defendant did not lose the right to appeal by failing to take timely action; he does not challenge any guilty plea procedures; and his motion is not a petition for writ of habeas corpus. We have, however, held that the trial court's order did not constitute a "final judgment" in a criminal proceeding, thereby raising the question whether it can be considered an interlocutory order. An interlocutory order is defined as "one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). A motion for post-conviction DNA testing cannot be considered an interlocutory order because it is not made during the pendency of a criminal proceeding. The conviction has already been entered and there is no further action for the court to take. Accordingly, we have no authority to allow defendant's petition for writ of certiorari.

### D. Rule 2 of Appellate Procedure

[3] The State suggests that this Court may use Rule 2 of the North Carolina Rules of Appellate Procedure to suspend the requirements of Rule 21. Rule 2 states:

> To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

N.C.R. App. P. 2.

We decline to exercise our discretion under Rule 2 because defendant has failed to demonstrate that review is necessary in order to prevent manifest injustice. First, defendant is arguing that testing

the clothing would show a lack of DNA evidence, thereby corroborating his testimony. The statute, however, provides for testing of "biological evidence" and not evidence in general. N.C. Gen. Stat. § 15A-269(a). Since defendant desires to demonstrate a lack of biological evidence, the post-conviction DNA testing statute does not apply. Moreover, this case involves an *attempted* rape charge. Given the evidence offered at trial, the absence of DNA evidence would not necessarily exonerate defendant. This is not a case in which DNA testing would point to another perpetrator. Rather, DNA testing would only show that there was no bodily fluid transfer, a fact that would not exonerate defendant.

Second, defendant argues that sanctions should be imposed for the Washington Police Department's failure to preserve the evidence for testing. Without a showing that the clothing contained biological material or DNA, the requirement to preserve a sample of the evidence under N.C. Gen. Stat. § 15A-268 is not implicated. Moreover, as defendant admits, the legislation fails to provide a remedy for the improper destruction of relevant biological material. Defendant, however, asks this Court to devise a remedy for improperly destroyed biological evidence. We decline to do so—that is a task for the General Assembly and not the Court of Appeals.

Because we conclude that review is not necessary to prevent manifest injustice, we decline to exercise our power under Rule 2 to suspend the requirements of Rule 21 and allow defendant's petition for writ of certiorari. Accordingly, we have no choice but to dismiss defendant's appeal.

## Conclusion

The General Assembly may wish to address the absence of any provision for appellate review of decisions under N.C. Gen. Stat. §§ 15A-269 and -270. Although the title of the Act—"An Act to Assist an Innocent Person Charged With or Wrongly Convicted of a Criminal Offense in Establishing the Person's Innocence"—indicates an intent to ensure that innocent defendants have the means to exonerate themselves, the lack of any appellate review, whether by appeal or certiorari, may undermine that goal. Until the General Assembly indicates otherwise, defendants are limited to reliance upon Rule 2.

Dismissed.

Chief Judge MARTIN and Judge CALABRIA concur.