NO. COA13-1043

NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

STATE OF NORTH CAROLINA

    v.

ELWOOD WARREN COLLINS

Craven County
No. 03 CRS 56121

Appeal by Defendant from Order entered 11 April 2013 by Judge Benjamin G. Alford in Craven County Superior Court. Heard in the Court of Appeals 22 January 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Laura E. Parker, for the State.*

*Richard J. Costanza for Defendant.*

STEPHENS, Judge.

*Procedural History and Evidence*

This case arises from Defendant Elwood Warren Collins's motion for post-conviction DNA testing. On 22 October 2003, Defendant was indicted for first-degree murder in the death of Christina Lee. On 6 May 2005, Defendant pled guilty to second-degree murder pursuant to the United States Supreme Court's opinion in *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162 (1970) (determining that a court may accept a plea of guilty

to second-degree murder when the State has strong evidence of guilt of first-degree murder even though the defendant claims that he is innocent, if the defendant, represented by competent counsel, intelligently concludes that he should plead guilty to second-degree murder rather than be tried for first-degree murder). As a result, the trial court sentenced Defendant in the presumptive range to an active term of 157 to 198 months in prison.

More than four years later, on 28 December 2009, Defendant filed a *pro se* motion seeking post-conviction DNA testing on certain items of evidence related to Lee's death. The trial court appointed counsel to represent Defendant on 10 February 2010, and Defendant filed an amended affidavit in support of his motion for genetic testing on 24 March 2010. The State filed an answer contesting Defendant's motion on 7 December 2012.[1] A proceeding on the motion was held on 12 March 2013, and counsel appeared for both sides. According to the trial court, the proceeding was conducted to determine "whether . . . [Defendant's] motion meets the threshold requirements of the statute, and if so, record a hearing [at] which time the State

---

[1] The record contains no explanation for the remarkable delay in the filing of the State's answer.

and [D]efendant will be allowed to present further evidence in support of their positions."

The parties have stipulated that they appeared before the trial court two days later, on 14 March 2013, "to address the request for post[-]conviction DNA testing." According to this stipulation, "[t]he parties agreed that [the trial court] could make a ruling based on the motion itself and the State's response." That afternoon, the trial court contacted counsel for the parties by e-mail, indicating that Defendant's motion was denied and stating that

> Defendant has failed to show how the DNA material to be tested is material to his defense or what th[e] 'newer and more accurate testing' consists of or how said results would be significantly more accurate and probative of the identity of the perpetrator. The mere mouthing of these conclusory statements, absent more, [is] insufficient to carry . . . [D]efendant's burden on this issue.

The e-mail directed the State to draft an order denying the motion, which would be circulated to defense counsel and then executed by the trial court. The court entered its written order denying the motion on 11 April 2013. Defendant appeals.

*Discussion*

On appeal, Defendant argues (1) that the trial court's 11 April 2013 order is null and void for lack of jurisdiction, or,

alternatively, (2) that the trial court erred in denying Defendant's motion for post-conviction DNA testing. We disagree.

*I. Jurisdiction*

> Whether a trial court has subject-matter jurisdiction is a question of law, reviewed *de novo* on appeal. Subject-matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. Subject-matter jurisdiction derives from the law that organizes a court and cannot be conferred on a court by action of the parties or assumed by a court except as provided by that law. When a court decides a matter without the court's having jurisdiction, then the whole proceeding is null and void, *i.e.*, as if it had never happened.

*McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (citations and internal quotation marks omitted; italics added).

Defendant argues that the trial court's 11 April 2013 order is null and void for lack of jurisdiction because it was filed out of session and without his consent. In making this argument, Defendant points out that the proceedings on 12 and 14 March 2013 were held during the 11 March 2013 Criminal Session of Craven County Superior Court, which concluded well before the

trial court filed its 11 April 2013 written order.[2] For support,

Defendant cites our Supreme Court's opinion in *State v. Trent*,

which held that:

> [A]n order of the superior court, in a criminal case, must be entered during the term, during the session, in the county[,] and in the judicial district where the hearing was held.[3] Absent consent of the parties, an order entered in violation of these requirements is null and void and without legal effect.

---

[2] For purposes of addressing Defendant's argument, we take judicial notice of the Division II calendar of superior courts for the spring 2013 term, available at http://www.nccourts.org/Courts/ CRS/Calendars/Documents/spring2013-statewide.pdf. *See generally Baker v. Varser*, 239 N.C. 180, 186, 79 S.E.2d 757, 761–62 (1954) (taking judicial notice of the assignment of trial judges to hold court). According to the information in that calendar, Judge Alford was assigned to Superior Court Division II, judicial district 3B. The spring term was set to begin January 7 and end July 1. Beginning 11 March 2013, Judge Alford was scheduled to hold the criminal and civil sessions of Craven County Superior Court, which were set to last for one week. Judge Alford was also scheduled to preside over the 18 March 2013 civil and criminal sessions of Craven County Superior Court, which were set to last for another week. Craven County Superior Court was not in session during the week of 8 April 2013, and Judge Alford was assigned instead to preside over the criminal and civil sessions of Carteret County Superior Court.

[3] "The use of 'term' has come to refer to the typical six-month assignment of superior court judges, and 'session' to the typical one-week assignments within the term." *Capital Outdoor Advertising, Inc. v. City of Raleigh*, 337 N.C. 150, 154 n. 1, 446 S.E.2d 289, 291 n. 1 (1994).

359 N.C. 583, 585, 614 S.E.2d 498, 499 (2005). We are not persuaded by Defendant's argument.

In *Trent*, the defendant was charged with and convicted of robbery with a dangerous weapon. *Id.* at 584, 614 S.E.2d at 499. Before trial, the defendant filed two motions to suppress. *Id.* A hearing on the motions was held on 11 October 2001 and continued to 17 January 2002. *Id.* The trial court declined to rule at the end of the January hearing and announced its determination seven months later, in the following term, denying the defendant's motions. *Id.* The defendant appealed, and our Supreme Court granted a new trial because the court's order was "null and void since it was entered out of term and out of session." *Id.* at 586, 614 S.E.2d at 500.

In so holding, the *Trent* Court relied on its previous opinion in *State v. Boone*, 310 N.C. 284, 287–88, 311 S.E.2d 552, 555 (1984). The defendant in *Boone* was charged with felonious manufacturing of a controlled substance and felonious possession of more than one ounce of marijuana. *Id.* at 284–85, 311 S.E.2d at 553. He was convicted of the latter. *Id.* at 285, 311 S.E.2d at 553. Prior to trial, he moved to suppress the marijuana in a motion heard on 16 and 18 June 1981. *Id.* at 286, 311 S.E.2d at 554. The trial court denied the motion by order signed in the

following session, on 25 June 1981. Because the order was signed outside the session in which the motion was heard, our Supreme Court determined that the defendant was entitled to a new trial. *Id.* at 286–87, 311 S.E.2d at 554–55. In so holding, the Court cited the following general rule:

> Judgments and orders substantially affecting the rights of parties to a cause pending in the Superior Court at a term must be made in the county and at the term when and where the question is presented, and our decisions on the subject are to the effect that, except by agreement of the parties or by reason of some express provision of law, they cannot be entered otherwise, and assuredly not in another district and without notice to the parties interested.

*Id.* at 287, 311 S.E.2d at 555 (citation and brackets omitted) (noting that this rule has been consistently applied in both criminal and civil cases).

In the time between the Court's opinions in *Boone* and *Trent*, our Supreme Court authored a third opinion, *Capital Outdoor Advertising, Inc. v. City of Raleigh*, 337 N.C. at 159, 446 S.E.2d at 294 [hereinafter *Capital Outdoor*]. In *Capital Outdoor*, the plaintiffs filed a complaint challenging the constitutionality of a city ordinance. *Id.* at 153, 446 S.E.2d at 291. The defendant moved to dismiss the complaint under Rule 12(b)(6), and the motion was heard on 29 October 1991, during

the 28 October 1991 session. *Id.* at 154, 446 S.E.2d at 292. The trial court granted the motion on 4 November 1991, after the expiration of the previous session. *Id.* Relying on the "ample power" of the legislature "to establish, define[,] and limit the jurisdiction of the Superior Courts," the Supreme Court affirmed the trial court's out-of-session order under section 7A-47.1 and Rule 6(c) of the Rules of Civil Procedure as "two separate statutes authorizing the execution and entry of the dismissal order of the trial judge out of session . . . ." *Id.* at 155-59, 446 S.E.2d at 292-94. *Capital Outdoor* is controlling precedent in this case.

As a preliminary matter, we note the apparent contradiction in these three cases. *Boone* stated that orders entered out of session and out of term are invalid based on absence of the trial court's jurisdiction and held that the out-of-session order in that case was invalid for the same reason. *Boone*, 310 N.C. at 287-88, 311 S.E.2d at 555. *Capital Outdoor* implicitly overruled *Boone* as it pertains to orders entered out of session. *Capital Outdoor*, 337 N.C. at 158, 446 S.E.2d at 294. *Trent* later applied *Boone* to determine that the trial court erred by

entering its order "out of term and out of session."[4] Though the language in *Trent* suggests that it was reinstating *Boone* in its entirety, the holding in that case is limited to an order entered out of *term*. *Trent*, 359 N.C. at 586, 614 S.E.2d at 500.

Relying on established principles of *stare decisis*, we read these cases together to the extent that they represent a reasonable, practicable, and stable interpretation of the law. *See Bulova Watch Co. v. Brand Distribs. of N. Wilkesboro, Inc.*, 285 N.C. 467, 473, 206 S.E.2d 141, 145–46 (1974) ("The law must be characterized by stability if [people] are to resort to it for rules of conduct. These considerations have brought forth the salutary doctrine of *stare decisis* which proclaims, in effect, that where a principle of law has become settled by a series of decisions, it is binding on the courts and should be followed in similar cases."). Applying those principles to *Boone*, *Capital Outdoor*, and *Trent*, the resulting rule is that the superior court is divested of jurisdiction when it issues an out-of-term order substantially affecting the rights of the parties unless that order is issued with the consent of the parties. If the court issues an order out of session, however,

---

[4] The *Trent* Court was clearly aware of the *Capital Outdoor* opinion, citing it for the definition of "term" and "session." *Trent*, 359 N.C. at 585, 614 S.E.2d at 499.

the court is not divested of jurisdiction as long as either section 7A-47.1 or Rule 6(c) is applicable. *See Trent*, 359 N.C. at 586, 614 S.E.2d at 500; *Capital Outdoor*, 337 N.C. at 158, 446 S.E.2d at 294.

Rule 6(c) has no bearing on this case. It is a rule of civil procedure, and this is a criminal matter. However, section 7A-47.1 is a general rule of judicial procedure and applies to both criminal and civil cases. *See* N.C. Gen. Stat. § 7A-2(1) (stating that the purpose of Chapter 7A is to create a place for "all statutes concerning the organization, jurisdiction[,] and administration of each division of the General Court of Justice"). In *Capital Outdoor*, the Court stated that section 7A-47.1 and Rule 6(c) are *separate* authorities for an order entered out of session. Therefore, either may be used to establish the trial court's jurisdiction, if applicable. Here, section 7A-47.1 applies to validate the trial court's out-of-session order.

Section 7A-47.1, entitled "[j]urisdiction in vacation or in session," provides as follows:

> In any case in which the superior court in vacation has jurisdiction, and all the parties unite in the proceedings, they may apply for relief to the superior court in vacation, or during a session of court, at their election. Any regular resident superior court judge of the district or set of districts as defined in G.S. 7A-

41.1(a)[5] and any special superior court judge residing in the district or set of districts and the judge regularly presiding over the courts of the district or set of districts have concurrent jurisdiction throughout the district or set of districts in all matters and proceedings in which the superior court has jurisdiction out of session; provided, that in all matters and proceedings not requiring a jury or in which a jury is waived, any regular resident superior court judge of the district or set of districts and any special superior court judge residing in the district or set of districts shall have concurrent jurisdiction throughout the district or set of districts with the judge holding the courts of the district or set of districts and any such regular or special superior court judge, in the exercise of such concurrent jurisdiction, may hear and pass upon such matters and proceedings in vacation, out of session or during a session of court.

N.C. Gen. Stat. § 7A-47.1 (2013) (re-codified in 1969 from N.C. Gen. Stat. § 7-65).

"[I]n vacation" jurisdiction, as described in section 7A-47.1, arises from the trial court's

general jurisdiction of all "in chambers" matters arising in the district. The general "vacation" or "in chambers" jurisdiction of a regular judge arises out of his general authority. Usually it may be exercised

---

[5] "Regular resident superior court judge of the district or set of districts" means a regular superior court judge who is a resident judge of any of the superior court districts established under section 7A-41. N.C. Gen. Stat. § 7A-41.1 (2013).

anywhere in the district and it is never dependent upon and does not arise out of the fact that [the judge] is at the time presiding over a designated term of court or in a particular county. As to [the judge], it is limited, ordinarily, to the district to which he is assigned by statute.

*Baker v. Varser*, 239 N.C. 180, 188, 79 S.E.2d 757, 763 (1954) (citations and internal quotation marks omitted). The *Baker* court's description is based on a prior version of section 7A-47.1, then-codified as section 7-65. *See Baker*, 239 N.C. at 187–88, 79 S.E.2d at 763; *see also* 1969 N.C. Sess. Laws 1377, ch. 1190, sec. 47 (re-codifying section 7-65 as section 7A-47.1). Section 7-65 is substantially similar to section 7A-47.1 except that the word "session," as used in 7A-47.1, was written as "term" or "term time" in section 7-65. *See Baker*, 239 N.C. at 187–88, 79 S.E.2d at 763. The change from "term" and "term time" to "session" tracks the 1962 amendments to the North Carolina Constitution, which "changed the word 'term' to 'session' when referring to the period of time during which superior court judges are assigned to court . . . ." *See Capital Outdoor*, 337 N.C. at 154 n.1, 446 S.E.2d at 291 n.1; *see also* N.C. Const. art. IV, § 9(2). This change comports with the rule discussed above, *i.e.*, that in vacation jurisdiction applies only to orders entered out of session, not those entered out of term.

We note that *Baker*'s description of in chambers jurisdiction, stating that the exercise of such jurisdiction is not dependent on the judge's presence in the county, conflicts in part with our opinion in *House of Style Furniture Corp. v. Scronce*, where we cited the

> uniform holding in this jurisdiction that, except by consent, or unless authorized by statute, a judge of the [s]uperior [c]ourt, even in his own district, has no authority to hear a cause or to make an order substantially affecting the rights of the parties, outside the county in which the action is pending.

33 N.C. App. 365, 369, 235 S.E.2d 258, 260 (1977) (citing *Bisnar v. Suttlemyre*, 193 N.C. 711, 138 S.E. 1 (1927)) [hereinafter *House of Style*]. Nonetheless, *House of Style* is not controlling in this case.

The plaintiffs in *House of Style* filed their complaint in Alexander County on 24 September 1975. *Id.* at 366, 235 S.E.2d at 259. The following year, the defendants moved to dismiss the plaintiff's claims and for entry of default judgment. *Id.* That motion was heard in Iredell County before a judge of judicial district 22, which included both Alexander County and Iredell County. *Id.* Six days after the hearing, the trial court filed its order dismissing the plaintiffs' claims and entering default

judgment.[6] *Id.* at 367, 235 S.E.2d at 259. On appeal, we vacated the trial court's order and judgment because we could not find any statute authorizing the trial judge to conduct a hearing out of county. *Id.* at 369, 235 S.E.2d at 261 ("[The parties] did not consent for the motion to be heard in Iredell County[,] and our research fails to disclose any statute authorizing [the judge]'s action in that county.").

Though *House of Style* was filed seventeen years after *Baker*, it does not discuss that opinion. *See id.* In addition, neither *House of Style* nor its cited authority, *Bisnar*, discusses section 7A-47.1 or its predecessor, section 7-65. *See id.; see also Bisnar*, 193 N.C. at 711, 138 S.E. at 1. Instead, the *House of Style* Court relies on the "uniform holding" described above. *See House of Style*, 33 N.C. App. at 369, 235 S.E.2d at 260. This Court is bound by *House of Style* as it pertains to orders in criminal cases arising from hearings occurring out of county.[7] *In re Civil Penalty*, 324 N.C. 373, 384,

---

[6] Neither our opinion in *House of Style* nor the record on file for that case specifies whether the trial court filed its order in Alexander County or Iredell County. *See id.;* 909 N.C. App. Records and Briefs No. 7622SC901, 59–65 (1976).

[7] Rule 7(b) of the North Carolina Rules of Civil Procedure was amended in 2005 to allow motions heard out of county. 2005 N.C. Sess. L. 163, H.B. 514, section 1. The wording was changed in 2011 to specifically allow motions "in a civil action in a

379 S.E.2d 30, 36-37 (1989). *House of Style* provides no direction, however, on the validity of an order in a criminal case arising from a valid hearing, but entered while the judge is sitting in another county. *See House of Style*, 33 N.C. App. at 369, 235 S.E.2d at 260. Therefore, pursuant to our discussion, *supra*, we conclude that section 7A-47.1 constitutes statutory authority to justify an order entered in a criminal case while the judge who heard the case in the proper county is sitting in another county within the district when the order is entered. *See* N.C. Gen. Stat. § 7A-47.1. As a result, *House of Style* has no impact on this case because Defendant's motion was properly heard in Craven County. Accordingly, Judge Alford's out-of-session order is proper even though it was issued while he was sitting in Carteret County.

Finally, we point out that in chambers jurisdiction under section 7A-47.1 does not require the consent of the parties. *E-B Grain Co. v. Denton*, 73 N.C. App. 14, 24, 325 S.E.2d 522, 528-29

---

county that is a part of a multicounty judicial district" to be heard in another county "which is part of that same judicial district with the permission of the senior resident superior court judge of that district . . . ." 2011 N.C. Sess. Laws 317, S.B. 586, section 1. Therefore, our opinion in *House of Style* is no longer applicable in civil cases as long as the senior resident superior court judge permits the case to be heard out of county. *See* N.C.R. Civ. P. 7(b)(4) (2013).

(1985) ("We believe [the trial court judge] clearly had authority under [section] 7A-47.1 to hear [the] plaintiff's motion . . . , even though [the] defendant's counsel objected. To interpret the statute [according to Defendant's argument] would mean that no superior court judge could hear any matter, whether in or out of session, without 'all the parties uniting in the proceedings.'"). Therefore, as provided by section 7A-47.1, a trial court may exercise in chambers jurisdiction in a nonjury matter arising in his or her district to enter an order out of session and without the consent of the parties. *See* N.C. Gen. Stat. § 7A-47.1; *Capital Outdoor*, 337 N.C. at 158, 446 S.E.2d at 294.

Here, there is no evidence in the record to indicate that the parties consented to the trial court's entry of its 11 April 2013 order out of session. Nonetheless, Defendant's motion for post-conviction DNA testing did not require the presence of a jury, the hearing on the motion was conducted while Judge Alford was sitting in Craven County Superior Court, and Judge Alford remained in District II at the time he filed the written order. For these reasons, section 7A-47.1 operated to allow the trial court to issue this out-of-session order. Accordingly, Defendant's first argument is overruled.

*II. Defendant's Motion for Post-Conviction DNA Testing*

The standard of review for the denial of a motion for post-conviction DNA testing is

> analogous to the standard of review for a motion for appropriate relief. Findings of fact are binding on this Court if they are supported by competent evidence and may not be disturbed absent an abuse of discretion. The lower court's conclusions of law are reviewed *de novo*.

*State v. Gardner*, __ N.C. App. __, __, 742 S.E.2d 352, 354 (2013). At the hearing on a motion for appropriate relief, the defendant has "the burden . . . of establishing the facts essential to his claim by a preponderance of the evidence." *State v. Hardison*, 143 N.C. App. 114, 120, 545 S.E.2d 233, 237 (2001) (citation and internal quotation marks omitted). A conclusory statement, alone, is not sufficient to satisfy this burden. *Gardner*, __ N.C. App. at __, 742 S.E.2d at 356 (stating that the defendant's burden of showing materiality in a motion for post-conviction DNA testing "requires more than [a] conclusory statement that the ability to conduct the requested DNA testing is material to [his] defense") (citations, internal quotation marks, and brackets omitted).

On appeal, Defendant argues that the trial court's order should be reversed because his motion and amended affidavit,

together, demonstrated the necessary conditions for the court to grant his motion for post-conviction DNA testing under section 15A-269. In response, the State asserts that section 15A-269 is not applicable in this case. Alternatively, the State contends that Defendant failed to show how DNA testing was material to his case and failed to demonstrate that there are "newer and more accurate tests that would be significantly more accurate and probative of the identity of the [true] perpetrator." Finally, the State argues that — even if the allegations in the affidavit support a finding of materiality — Defendant waived his right to test any evidence before a jury by entering an *Alford* guilty plea. We affirm the trial court's order on grounds that Defendant failed to adequately establish that newer and more accurate tests would identify the perpetrator or contradict prior test results. We do not address the State's argument that Defendant is not entitled to post-conviction DNA testing because he entered an *Alford* plea.

*(1) Background*

Under section 15A-269,

> (a) A defendant may make a motion . . . for performance of DNA testing . . . if the biological evidence meets all of the following conditions:

(1) [The evidence is] material to the defendant's defense.

(2) [The evidence is] related to the investigation or prosecution that resulted in the judgment.

(3) [The evidence meets] either of the following conditions:

> a. It was not DNA tested previously.
>
> b. It was tested previously, but the requested DNA test would provide results that are *significantly more accurate* and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results.

(b) The court shall grant the motion for DNA testing . . . upon its determination that:

> (1) The conditions set forth in . . . subsection (a) . . . have been met;
>
> (2) If the DNA testing being requested had been conducted on the evidence, there exists a reasonable probability that the verdict would have been more favorable to the defendant; and
>
> (3) The defendant has signed a sworn affidavit of innocence.

N.C. Gen. Stat. § 15A-269 (2013) (emphasis added).

Given the allegations in Defendant's motion and amended affidavit,[8] the trial court made the following pertinent findings of fact and conclusion of law:

> 10. . . . [D]efendant has failed stated [sic] how . . . additional DNA testing would be material to his defense. . . . [D]efendant merely makes a conclusory statement.
>
> 11. . . . [D]efendant has failed to show how "newer and more accurate testing" [w]ould be significantly more accurate and probative of the identity of the perpetrator.
>
> . . . .
>
> . . . [D]efendant has failed to meet all requirements of § 15A-269.

On appeal, Defendant concedes that the statements in his *pro se* motion are insufficient to justify post-conviction DNA testing under section 15A-269, but argues that the additional statements in his amended affidavit sufficiently "discuss [his] reasoning for entering his *Alford* plea, the DNA mixture that did not exclude or isolate him, his cohabitation with the victim, and his understanding that more accurate methods of DNA testing

---

[8] Though the State does not contest the propriety of Defendant's amended affidavit, we note that amendments to the analogous motion for appropriate relief are permissible under N.C. Gen. Stat. § 15A-1415. Thus, amendments to a motion for post-conviction DNA testing are similarly permissible pursuant to standards prescribed in section 15A-1415.

are now available" to justify relief under section 15A-269. We disagree.

*(2) Applicability of Section 15A-269*

The State argues that section 15A-269 is not applicable in this case because Defendant seeks testing to show a *lack* of biological evidence. For support, Defendant cites to our opinion in *State v. Brown*, where we commented that section 15A-269 "provides for testing of 'biological evidence' and not evidence in general." 170 N.C. App. 601, 609, 613 S.E.2d 284, 289 (2005), *superseded by statute on other grounds*, *State v. Norman*, 202 N.C. App. 329, 332–33, 688 S.E.2d 512, 515 (2010). This argument is without merit.

In *Brown*, the defendant, a former assistant principal, was indicted for and convicted of attempted second-degree rape of a former student. *Id.* at 602, 613 S.E.2d at 285. Defendant did not appeal that conviction. *Id.* at 603, 613 S.E.2d at 285. As a result, evidence in the form of a torn blouse and pants was turned over to the local police department. *Id.* Five months later, Defendant filed a motion for post-conviction DNA testing of a torn blouse, a pair of pants, an undergarment, nail clippings and hair samples, and other items related to his conviction. *Id.* at 603, 609, 613 S.E.2d at 285, 288–89. Despite

this motion, the blouse and jeans were destroyed after the victim indicated that she did not want them returned. *Id.* The other evidence had never been collected and was not available for testing. *See id.* at 603-04, 613 S.E.2d at 286. One month later, the trial court denied the defendant's motion because "no . . . testing could be conducted." *Id.* at 603, 613 S.E.2d at 286.

On appeal, this Court declined to review the trial court's decision because Article 13, which deals with the DNA database and databank, did not at that time include a provision for appellate review of an order denying post-conviction DNA testing.[9] *Id.* at 607, 613 S.E.2d at 287. After concluding that we had no authority to review the defendant's petition for writ of *certiorari*, we also declined to review the matter pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure. *Id.* at 608, 613 S.E.2d at 288. In so holding, we explained that no manifest injustice was present in the case because the defendant was asking for testing to "show a lack of DNA evidence, thereby corroborating his testimony[, which denied the allegations made at trial]." *Id.* at 609, 613 S.E.2d at 288-89. Commenting that

---

[9] Appellate review of an order denying a defendant's motion for DNA testing is now appealable as of right under section 15A-270.1 (2013).

section 15A-269 did not apply when a defendant seeks to demonstrate a "lack of biological evidence" and noting that the defendant was only charged with *attempted* rape, not actual rape, we concluded that "the absence of DNA evidence would not necessarily exonerate [the] defendant." *Id.* at 609, 613 S.E.2d at 289.

Unlike the defendant in *Brown*, Defendant here is seeking "[a] conclusive test on the biological and other samples taken into evidence in this matter." He is not seeking to show a lack of DNA evidence. Accordingly, *Brown* does not operate to bar Defendant's motion.

*(3) Accuracy and Probative Value of Newer Tests*

The State also argues that the trial court properly denied Defendant's motion because Defendant failed to demonstrate "how 'newer and more accurate testing' would be significantly more accurate and probative of the identity of the perpetrator." We agree.

In his *pro se* motion for post-conviction DNA testing, Defendant referenced discussions with "DNA [e]xperts," described a "new technique known as 'Touch DNA' that allows [f]or the amplification and analysis of very minute amounts [o]f cellular / DNA material," and alleged that the items sought to be tested

"can now be subjected to newer and more accurate testing which would provide results that are significantly more accurate and probative of the identity of the perpetrator [o]r accomplice, or have a reasonable probability of . . . contradicting prior test results." In his amended affidavit, Defendant provided the following additional information:

> 7. It is my understanding that, since 2003 when this case was initiated, more accurate methods of DNA testing have been developed and put in place in forensic laboratories, and such methods would have a reasonable probability of contradicting the prior test results.

> 8. Had more accurate DNA testing methods excluded me as the perpetrator of this crime, the result of this case would have been different, inasmuch as I would not have entered an *Alford* guilty plea, but would have submitted the matter to a jury at trial.

These allegations do not establish that the requested DNA tests are "significantly more accurate and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results" under section 15A-269(a)(3)(b).

As we noted in *State v. Foster*, a mere conclusory statement is insufficient to establish materiality. __ N.C. App. __, __, 729 S.E.2d 116, 120 (2012). Similarly, such a statement is

insufficient to establish that a requested DNA test would provide results that are significantly more accurate and probative of the identity of the perpetrator or accomplice or have a reasonable probability of contradicting prior test results. *See id.* Rather, the defendant must provide *specific reasons* that the requested DNA test would be significantly more accurate and probative of the identity of the perpetrator or accomplice or that there is a reasonable probability of contradicting the previous test results. *See* N.C. Gen. Stat. § 15A-269.

In this case, Defendant's mere allegations that "newer and more accurate testing" methods exist, "which would provide results that are significantly more accurate and probative of the identity of the perpetrator [o]r accomplice, or have a reasonable probability of . . . contradicting prior test results" are incomplete and conclusory. Even though he named a new method of DNA testing, he provided no information about how this method is different from and more accurate than the type of DNA testing used in this case. Without more specific detail from Defendant or some other evidence, the trial court could not adequately determine whether additional testing would be significantly more accurate and probative or have a reasonable

probability of contradicting past test results. For these reasons, we conclude that the court properly denied Defendant's motion for post-conviction DNA testing. Accordingly, Defendant's second argument is overruled, and the trial court's order is

AFFIRMED.

Judges STEELMAN and DAVIS concur.