IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-250

 Filed: 18 December 2018

Mecklenburg County, Nos. 01 CRS 51748, 49

STATE OF NORTH CAROLINA

 v.

TERRAINE SANCHEZ BYERS

 Appeal by Defendant from order dated 3 August 2017 by Judge W. Robert Bell

in Superior Court, Mecklenburg County. Heard in the Court of Appeals 1 October

2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General Joseph L.
 Hyde.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Wyatt
 Orsbon, for Defendant.

 McGEE, Chief Judge.

 Terraine Sanchez Byers (“Defendant”) was convicted of first-degree murder of

his former girlfriend and first-degree burglary on 3 March 2004. After exhausting

his direct appeal, Defendant filed a pro se motion for post-conviction DNA testing

pursuant to N.C. Gen. Stat. § 15A-269 on 31 July 2017. The trial court entered an

order dated 3 August 2017 denying Defendant’s motion. Defendant appeals and

argues that the trial court erred in denying his motion for post-conviction DNA

testing. We agree.
 STATE V. BYERS

 Opinion of the Court

 I. Factual and Procedural History

 Defendant was convicted of first-degree murder and first-degree burglary on 3

March 2004. Defendant was sentenced to life imprisonment without parole for the

murder conviction and a minimum of 77 months to a maximum of 102 months of

imprisonment for the burglary conviction. Defendant appealed and this Court upheld

the trial court’s decision in State v. Byers, 175 N.C. App. 280, 623 S.E.2d 357 (2006)

(“Byers I”). Our Supreme Court subsequently denied Defendant’s petition for

discretionary review on 6 April 2006. State v. Byers, 360 N.C. 485, 631 S.E.2d 135

(2006).

 Defendant’s convictions arose out of events that occurred on the evening of 22

November 2001 when Defendant’s ex-girlfriend, Shanvell Burke (“Ms. Burke”), was

stabbed to death inside her Charlotte apartment (“Ms. Burke’s apartment” or “the

apartment”). Officers had previously been called to Ms. Burke’s apartment multiple

times because of Ms. Burke’s fear of Defendant. Byers I, 175 N.C. App. at 284, 623

S.E.2d at 359-60. Reginald Williams (“Mr. Williams”) was inside Ms. Burke’s

apartment on the evening of 22 November 2001 and testified that he and Ms. Burke

were watching television when they heard a crash at the back door of the apartment.

Id. at 283, 623 S.E.2d at 359. Mr. Williams further testified that Ms. Burke went to

the back door and he heard her yelling, “Terraine, stop” before Mr. Williams fled the

apartment in fear. Id.

 -2-
 STATE V. BYERS

 Opinion of the Court

 When officers arrived at the scene, they saw Defendant leaving the apartment

through a broken window in a door, and described him as “nervous and profusely

sweating.” Id. at 283, 623 S.E.2d at 359. After informing the officers that Ms. Burke

was inside and injured, Defendant attempted to flee the scene. Id. Defendant was

quickly apprehended and was found to have a deep laceration on his left hand. Id.

The officers found Ms. Burke deceased inside the apartment. The officers also found

a knife with a broken blade. Id. at 283-84, 623 S.E.2d at 359.

 Investigators analyzed fingernail scrapings from Defendant’s hands, a blood

stain from a cushion on Ms. Burke’s couch, the knife handle, the knife blade, and

various other blood stains throughout the apartment. Id. at 285, 623 S.E.2d at 360.

The DNA from the several samples all matched either Defendant or Ms. Burke. Id.

Defendant stipulated that the blood on the shirt that he was wearing at the time of

his arrest was Ms. Burke’s. For a more detailed description of the facts underlying

Defendant’s convictions, refer to this Court’s prior opinion in Byers I.

 Defendant filed a pro se motion for post-conviction DNA testing on 31 July

2017. In his motion, Defendant asserted that he was on the other side of town waiting

for a bus when the attack on Ms. Burke occurred. Defendant further alleged that one

of the State’s witnesses testified she saw Defendant getting on the 9:00 p.m. city bus

on the night of the events in question. Defendant alleged that a private investigator

 -3-
 STATE V. BYERS

 Opinion of the Court

swore in an affidavit that it would have been impossible for Defendant to arrive at

Ms. Burke’s apartment prior to the alleged 911 call.

 Defendant further stated in his motion that, when he arrived at Ms. Burke’s

apartment, he noticed the “back door smashed in.” Defendant also asserted that he

went inside the apartment to investigate and was attacked by a man wearing a plaid

jacket. The two men struggled, which Defendant argues explains the presence of his

DNA throughout the apartment. Defendant stated he lost his balance during the

attack and fell, allowing the assailant to escape. Defendant argues that, because both

he and Ms. Burke struggled with the unknown assailant, DNA testing of his and Ms.

Burke’s previously untested clothing would reveal the identity of the actual

perpetrator. Defendant noted that the State’s DNA expert reported the presence of

human blood in various locations throughout Ms. Burke’s apartment that did not

match either Defendant or Ms. Burke; however, this information was not introduced

at trial. Defendant further requested that the items of clothing be preserved and that

an inventory of the evidence be prepared.

 The trial court entered an order dated 3 August 2017 denying Defendant’s

motion. The trial court held that Defendant had failed to sufficiently allege how DNA

testing of the requested items would be “material to his defense.” Defendant appeals.

 II. Analysis

 -4-
 STATE V. BYERS

 Opinion of the Court

 The issues Defendant argues are that the trial court erred in denying his

motion for post-conviction DNA testing: (1) “prior to obtaining and reviewing the

statutorily required inventory of evidence” collected during the criminal

investigation, and (2) “before appointing counsel when [his] motion for such testing

establishe[d] that . . . [D]efendant [was] indigent and that the testing may be material

to his defense.”

 A. Denial of Motion Prior to Inventory of Evidence

 Defendant argues the trial court erred by denying his motion for post-

conviction DNA testing before obtaining and reviewing the statutorily required and

requested inventory of physical and biological evidence collected during the criminal

investigation.

 1. Appellate Jurisdiction

 Initially, the State responds by arguing Defendant “lacks the right to appeal”

the denial of a motion to locate and preserve evidence under N.C. Gen. Stat. § 7A-

27(b)(1) and N.C. Gen. Stat. § 15A-270.1. The State further argues that Defendant

failed to preserve this issue for appellate review by failing to obtain a ruling on the

motion as required by N.C. R. App. P 10(a)(1), that “ordinarily results in waiver of

appellate review of the issue.” In re B.E., 186 N.C. App. 656, 657, 652 S.E.2d 344,

345 (2007). However, the State misconstrues Defendant’s argument. Defendant does

not argue, as the State contends, that the trial court erred by failing to order the

 -5-
 STATE V. BYERS

 Opinion of the Court

preservation and inventory of the requested evidence. Instead, Defendant argues the

trial court erred in denying his motion for post-conviction DNA testing prior to

receiving the inventory of evidence. Therefore, this case is distinguishable from the

case cited by the State, State v. Doisey, 240 N.C. App. 441, 770 S.E.2d 177 (2015),

where this Court dismissed a defendant’s argument that the trial court erred in

failing to order the inventory of biological evidence.

 N.C. Gen. Stat. § 15A-270.1 (2017) explicitly states that “[t]he defendant may

appeal an order denying the defendant’s motion for DNA testing under this Article,

including by an interlocutory appeal.” Therefore, appeal was the proper avenue for

reversing the trial court’s order, and Defendant preserved this issue for appellate

review by appealing the denial of his motion for post-conviction DNA testing.

Defendant has also filed a petition for a writ of certiorari for review of this issue.

However, having found that Defendant’s appeal is proper under N.C.G.S. § 15A-

270.1, we deny his petition as unnecessary.

 2. Procedure for the Inventory of Evidence

 In order to fully analyze Defendant’s argument, we must consider the statutory

procedure for requesting an inventory of evidence and the role of the inventory within

the post-conviction DNA testing statute. The statutory procedure for compiling an

inventory of evidence is set out in N.C. Gen. Stat. § 15A-268(a7), which requires

custodial agencies:

 -6-
 STATE V. BYERS

 Opinion of the Court

 Upon written request by the defendant, the custodial
 agency shall prepare an inventory of biological evidence
 relevant to the defendant’s case that is in the custodial
 agency’s custody. If the evidence was destroyed through
 court order or other written directive, the custodial agency
 shall provide the defendant with a copy of the court order
 or written directive.

N.C.G.S. § 15A-268(a7). N.C.G.S. § 15A-269(f) (2017) similarly requires: “Upon

receipt of a motion for postconviction DNA testing, the custodial agency shall

inventory the evidence pertaining to that case and provide the inventory list, as well

as any documents, notes, logs, or reports relating to the items of physical evidence, to

the prosecution, the petitioner, and the court.”

 Defendant’s argument that the trial court erred by denying his motion for post-

conviction DNA testing prior to obtaining an inventory of evidence was recently

addressed by this Court in State v. Tilghman, ___ N.C. App. ___, ___ S.E.2d___, 2018

WL 4700630 (filed 2 October 2018). In Tilghman, the defendant made similar

arguments under both N.C.G.S. § 15A-268(a7) and N.C.G.S. § 15A-269(f), that the

trial court erred by denying his motion for post-conviction DNA testing prior to

receiving an inventory of the evidence. Tilghman, ___ N.C. App. at ___, ___ S.E.2d at

___. In Tilghman, this Court, addressed both statutes in turn, rejected the

defendant’s arguments and found no error in the trial court’s denial of the defendant’s

motion.

 -7-
 STATE V. BYERS

 Opinion of the Court

 In addressing N.C.G.S. § 15A-268(a7), Tilghman held the trial court “did not

err in denying [d]efendant’s motion for postconviction DNA testing prior to obtaining

an inventory of biological evidence which [d]efendant never requested, and we must

dismiss this argument. . . . Assuming arguendo [d]efendant properly requested an

inventory of biological evidence, case law would bind us to dismiss this argument.”

Id. at ___, ___ S.E.2d at ___ (internal citations omitted) (citing Doisey, 240 N.C. App.

at 447-48, 770 S.E.2d at 181-82). Unlike the defendants in both Tilghman and Doisey,

Defendant in the present case clearly filed a written request for an inventory of

biological evidence. While Defendant’s motion was titled a “Request for Post-

Conviction DNA Testing,” on page fourteen of his motion, Defendant specifically

states: “Defendant also request [sic] the court to order preservation, preparation of

the evidence and its inventory.” Defendant’s motion cites to both N.C.G.S. § 15A-

268(a7) and N.C.G.S. § 15A-269(f).

 However, in State v. Randall, ___ N.C. App. ___, ___, 817 S.E.2d 219, 222 (2018)

this Court addressed the requirements of N.C.G.S. § 15A-268(a7) and held that the

written request for an inventory of evidence must be directed to the custodial agency.

This Court held that, without evidence in the record that the defendant made a proper

request under N.C.G.S. § 15A-268(a7), there was no ruling for this Court to consider

and that defendant’s appeal must be dismissed. Similarly, the record in the case

before us is devoid of any evidence indicating Defendant ever made a request to a

 -8-
 STATE V. BYERS

 Opinion of the Court

custodial agency; therefore, Defendant was not entitled to an inventory of the

evidence under N.C.G.S. § 15A-268(a7).

 In addressing N.C.G.S. § 15A-269, this Court in Tilghman held:

 The statute is silent as to whether a defendant or the trial
 court bears the burden of serving the motion for inventory
 on the custodial agency.

 Here, the record lacks proof either Defendant or the trial
 court served the custodial agency with the motion for
 inventory. Assuming arguendo it is the trial court’s burden
 to serve the custodial agency with the motion, any error by
 the court below [in denying the defendant’s motion for post-
 conviction DNA testing prior to receiving the inventory] is
 harmless error. As held supra, Defendant failed to meet
 his burden of showing materiality. Accordingly, the trial
 [court] did not err by denying his motion for DNA testing
 prior to an inventory under N.C. Gen. Stat. § 15A-269(f).

Tilghman, ___ N.C. App. at ___, ___ S.E.2d at ___. As discussed below, Defendant in

the present case, unlike in Tilghman, met his burden of showing materiality.

 3. Timing of Trial Court’s Determination

 Defendant contends that a trial court is required to receive the inventory prior

to making its determination under N.C.G.S § 15A-269. We disagree. In Doisey, this

Court stated:

 The stated policy behind [our State’s DNA Database and
 Databank Act of 1993] is to assist federal, State, and local
 criminal justice and law enforcement agencies in the
 identification, detection, or exclusion of individuals who
 are subjects of the investigation or prosecution of felonies
 or violent crimes against the person[.] Thus, in applying
 the Act in any particular case, we must strive to harmonize

 -9-
 STATE V. BYERS

 Opinion of the Court

 its provisions while being mindful of this legislative intent
 and seeking to avoid nonsensical interpretations. Both the
 plain language of section 15A–269 as quoted supra, and the
 express intent of the Act as stated in section 15A–266.1,
 make absolutely clear that its ultimate focus is to help
 solve crimes through DNA testing. All provisions of the Act
 must be understood as facilitating that ultimate goal.

Doisey, 240 N.C. App. at 445, 770 S.E.2d at 180 (internal quotation marks and

citations omitted). We further noted that “the required inventory under section 15A–

269 is merely an ancillary procedure to an underlying request for DNA testing.” Id.

at 446, 770 S.E.2d at 181.

 N.C.G.S. § 15A-269(f) provides that: “[u]pon receipt of a motion for

postconviction DNA testing, the custodial agency shall inventory the evidence . . . .”

This language indicates that a custodial agency’s duty to prepare an inventory is

conditioned on the receipt of a motion for post-conviction DNA testing, unlike

N.C.G.S. § 15-268(a7), where the duty to act is predicated on the receipt of a “written

request by the defendant.” “Thus, a defendant who requests DNA testing under

section 15A–269 need not make any additional written request for an inventory of

biological evidence.” Doisey, 240 N.C. App. at 445, 770 S.E.2d at 180.

 Under the language of N.C.G.S. § 15A-269, the trial court’s duty is not similarly

conditioned on the receipt of an inventory from a custodial agency. Instead, N.C.G.S.

§ 15A-269(b) states:

 The court shall grant the motion for DNA testing . . . upon
 its determination that:

 - 10 -
 STATE V. BYERS

 Opinion of the Court

 (1) The conditions set forth in subdivisions (1), (2),
 and (3) of subsection (a) of this section have been
 met;

 (2) If the DNA testing being requested had been
 conducted on the evidence, there exists a
 reasonable probability that the verdict would have
 been more favorable to the defendant; and

 (3) The defendant has signed a sworn affidavit of
 innocence.

 N.C.G.S. § 15A-269(b) clearly lays out three conditions the trial court must

determine exist prior to granting a motion for post-conviction DNA testing.

Obtaining and reviewing the results of an inventory prepared by a custodial agency

is not one of the conditions. This reading of N.C.G.S. § 15A-269(b) is consistent with

the overall purpose of the statute to “assist federal, State, and local criminal justice

and law enforcement agencies in the identification, detection, or exclusion of

individuals who are subjects of the investigation or prosecution of felonies or violent

crimes against the person[.]” Doisey, 240 N.C. App. at 445, 770 S.E.2d at 180.

 Defendant argues that, “[w]ithout obtaining and reviewing the required

inventories, the trial court lacked any knowledge about the nature or status of the

evidence in [Defendant’s] case[.]” Under N.C.G.S. § 15A-269(a), “[t]he defendant has

the burden . . . of establishing the facts essential to his claim by a preponderance of

the evidence.” State v. Cox, 245 N.C. App. 307, 310, 781 S.E.2d 865, 867 (2016). The

trial court’s ability to analyze whether the conditions in N.C.G.S. § 15A-269(b) were

 - 11 -
 STATE V. BYERS

 Opinion of the Court

met is not contingent on the results of an inventory of the evidence. Whether the

requested evidence is still in the possession of the custodial agency is immaterial to

the trial court’s determination under N.C.G.S. § 15A-269(b). Instead, the trial court

is required to make its determination as to whether Defendant has sufficiently

alleged the conditions set forth in N.C.G.S. § 15A-269(b) that the DNA testing sought

is: (1) material to Defendant’s defense, (2) related to the prior investigation or

prosecution, (3) has not been tested previously or would result in more accurate

results, (4) likely to produce a more favorable result for Defendant, and (5) Defendant

has signed an affidavit of innocence. See N.C.G.S. § 15A-269(b). Therefore, the trial

court did not err in denying Defendant’s motion for post-conviction DNA testing prior

to obtaining and reviewing the inventory.

 B. Appointment of Counsel

 Defendant argues the trial court erred in denying his motion for post-

conviction DNA testing because the allegations in his motion were sufficient to

establish that he was entitled to the appointment of counsel. We agree. N.C. Gen.

Stat. § 15A-269 (2017) sets out the standards for evaluating motions for post-

conviction DNA testing and for the appointment of counsel. Under N.C.G.S. § 15A-

269,

 (a) A defendant may make a motion before the trial court
 that entered the judgment of conviction against the
 defendant for performance of DNA testing . . . if the
 biological evidence meets all of the following conditions:

 - 12 -
 STATE V. BYERS

 Opinion of the Court

 (1) Is material to the defendant's defense.

 (2) Is related to the investigation or prosecution that
 resulted in the judgment.

 (3) Meets either of the following conditions:

 a. It was not DNA tested previously.

 b. It was tested previously, but the requested
 DNA test would provide results that are
 significantly more accurate and probative
 of the identity of the perpetrator or
 accomplice or have a reasonable probability
 of contradicting prior test results.

 ....

 (c) . . . [T]he court shall appoint counsel for the person who
 brings a motion under this section if that person is
 indigent. If the petitioner has filed pro se, the court shall
 appoint counsel for the petitioner . . . upon a showing that
 the DNA testing may be material to the petitioner’s claim
 of wrongful conviction.

N.C.G.S. § 15-269. “Thus, to be entitled to counsel, defendant must first establish

that (1) he is indigent and (2) DNA testing may be material to his wrongful conviction

claim.” Cox, 245 N.C. App. at 312, 781 S.E.2d at 868.

 In State v. Gardner, 227 N.C. App. 364, 742 S.E.2d 352 (2013), this Court held

that the materiality showing required to be entitled to the appointment of counsel

under subsection (c) is no less demanding than under subsection (a)(1). Id. at 368,

742 S.E.2d at 355. The level of materiality required under subsection (a)(1) to support

 - 13 -
 STATE V. BYERS

 Opinion of the Court

a motion for post-conviction DNA testing has been frequently litigated and has been

a high bar for pro se litigants. See, e.g. State v. Lane, 370 N.C. 508, 809 S.E.2d 568

(2018); Randall, ___ N.C. App. ___, 817 S.E.2d 219. In Lane, our Supreme Court held

that DNA evidence is “material” when

 there is a reasonable probability that, had the evidence
 been disclosed to the defense, the result of the proceeding
 would have been different. The determination of
 materiality must be made in the context of the entire
 record, and hinges upon whether the evidence would have
 affected the jury’s deliberations. In the context of a capital
 case, we must consider whether the evidence would have
 changed the jury’s verdict in either the guilt or sentencing
 phases.

Lane, 370 N.C. at 519, 809 S.E.2d at 575 (internal quotation marks and citations

omitted).

 This Court has regularly held that the burden of proof to show materiality is

on the movant and a defendant fails to meet that burden when the defendant provides

only “conclusory statements” as to the evidence’s materiality. See State v. Turner,

239 N.C. App. 450, 454, 768 S.E.2d 356, 359 (2015); State v. Foster, 222 N.C. App.

199, 205, 729 S.E.2d 116, 120 (2012). Instead, “‘[a] defendant must provide specific

reasons that the requested DNA test would be significantly more accurate and

probative of the identity of the perpetrator or accomplice or that there is a reasonable

probability of contradicting the previous test results.’” Cox, 245 N.C. App. at 312, 781

 - 14 -
 STATE V. BYERS

 Opinion of the Court

S.E.2d at 869 (emphasis in original) (quoting State v. Collins, 234 N.C. App. 398, 411-

12, 761 S.E.2d 914, 922-23 (2014)).

 In this case, while the trial court’s order denying Defendant’s motion refers to

his description of the events as “conclusory claims,” Defendant has alleged more than

the defendants in the above-cited cases. Defendant has provided specific reasons that

the requested DNA test would be significantly more probative of the identity of the

perpetrator including: (1) a comprehensive statement of Defendant’s version of the

events of the night of Ms. Burke’s murder, stating that he was on a bus at the time of

Ms. Burke’s murder, arrived at the scene after she was attacked, and was then

attacked by an unknown assailant; (2) Defendant’s version of events was consistent

with his statements at the scene, his defense at trial, and the testimony of at least

one eyewitness; (3) specifically identifying items to be DNA tested; and (4) explaining

how DNA testing of the various items of clothing would corroborate his version of the

events and why the DNA evidence presented at trial offered an incomplete picture of

the events.

 Defendant’s motion avoids many of the issues this Court’s prior cases have

highlighted in finding insufficient allegations of materiality. Defendant did not plead

guilty and has maintained his innocence. Cf. State v. Randall, ___ N.C. App. ___, 817

S.E.2d 219 (2018) (noting that those who plead guilty have more difficulty in alleging

materiality). There was additional evidence supporting Defendant’s allegation that

 - 15 -
 STATE V. BYERS

 Opinion of the Court

there was a different perpetrator, including his statements to officers at the scene of

the crime and eyewitness testimony regarding his location at the time of the crime.

Cf. Lane, 370 N.C. 508, 809 S.E.2d 598 (holding that “the dearth of evidence at trial

pointing to a second perpetrator” supported finding the defendant failed to

sufficiently allege materiality). Defendant is hoping to show the presence of an

alternative perpetrator’s DNA, rather than the lack of his own DNA. Cf. Collins, 234

N.C. App. at 410, 761 S.E.2d at 923 (noting that defendants seeking to demonstrate

a “lack of biological evidence” are not entitled to post-conviction DNA testing). The

items Defendant moved to have tested were identified and preserved soon after Ms.

Burke’s murder. Cf. Randall, ___ N.C. App. ___, ___, 817 S.E.2d 219, 222 (2018)

(holding that DNA evidence collected over a month after the alleged crime was not

material, as it could not be used to prove Defendant was not involved in a sexual

relationship with a minor). The results of the DNA testing could corroborate

Defendant’s defense at trial. Cf. State v. McPhaul, ___ N.C. App. ___, 812 S.E.2d 728

(17 April 2018) (unpublished) (holding DNA testing of gunshot residue kits was not

material as it could not support Defendant’s theory of self-defense). The DNA results

could directly contradict the State’s argument that Defendant was the sole

perpetrator of the crime. Cf. State v. Little, ___ N.C. App. ___, 796 S.E.2d 404 (21

February 2017) (unpublished) (holding DNA testing of rape kit for DNA of a third-

 - 16 -
 STATE V. BYERS

 Opinion of the Court

party would not be material because the victim admitted to consensual sex with the

third party the day prior to her attack).

 Our Supreme Court has held that a defendant fails to establish materiality

where the evidence of guilt is so overwhelming that there is not “a reasonable

probability that the verdict would have been more favorable to the defendant” had

the DNA evidence been presented. Lane, 370 N.C. at 518-20, 809 S.E.2d at 575-76;

State v. Floyd, 237 N.C. App. 300, 765 S.E.2d 74 (2014) (holding that materiality is a

higher burden than relevancy at trial). In evaluating the standard for an ineffective

assistance of counsel claim under the Sixth Amendment, the United States Supreme

Court applies a similar “reasonable probability” standard. A defendant “must show

that there is a reasonable probability that, but for counsel’s” deficient representation,

there is a “reasonable probability . . . the result of the proceeding would have been

different.” Strickland v. Washington, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698 (1984).

The Supreme Court in Strickland further explained the standard by holding:

 It is not enough for the defendant to show that the errors
 had some conceivable effect on the outcome of the
 proceeding. . . . . A reasonable probability is a probability
 sufficient to undermine confidence in the outcome. . . . .
 When a defendant challenges a conviction, the question is
 whether there is a reasonable probability that, absent the
 errors, the factfinder would have had a reasonable doubt
 respecting guilt.

Id. at 693-95, 80 L. E. 2d at 697-98.

 - 17 -
 STATE V. BYERS

 Opinion of the Court

 In the case before us, there is substantial evidence at trial tending to show

Defendant’s guilt. However, evidence indicating guilt cannot be dispositive of the

issue. The weight of the evidence indicating guilt must be weighed against the

probative value of the possible DNA evidence. Our Supreme Court has found DNA

to be “highly probative of the identity of the victim’s killer.” State v. Daughtry, 340

N.C. 488, 512, 459 S.E.2d 747, 759 (1995).

 In enacting N.C.G.S. § 15A-269, our General Assembly created a potential

method of relief for wrongly incarcerated individuals. To interpret the materiality

standard in such a way as to make that relief unattainable would defeat that

legislative purpose. See Burgess v. Your House of Raleigh, 326 N.C. 205, 216, 388

S.E.2d 134, 140 (1990) (“[A] statute must be construed, if possible, so as to give effect

to every provision, it being presumed that the Legislature did not intend any of the

statute’s provisions to be surplusage.”). A recent dissent in an opinion in this Court

highlighted the position in which our previous interpretation of materiality has

placed pro se defendants, stating “we are requiring indigent defendants to meet this

illusory burden of materiality, with no guidance or examples of what actually

constitutes materiality. Under our case law, therefore, it would be difficult for even

an experienced criminal defense attorney to plead these petitions correctly.” State v.

Sayre, ___ N.C. App. ___, 803 S.E.2d 699 (2017) (unpublished) (Murphy, J.,

dissenting) aff’d per curiam ___ N.C. ___, ___ S.E.2d ___ (2018). We hold Defendant

 - 18 -
 STATE V. BYERS

 Opinion of the Court

in the present case has satisfied this difficult burden. Because the trial court erred

in finding that Defendant failed to meet his burden of establishing materiality, the

trial court’s order must be reversed.

 III. Conclusion

 The trial court did not err in making its determination prior to receiving an

inventory of the available evidence. However, the trial court erred in determining

that Defendant failed to sufficiently plead the materiality of the requested post-

conviction DNA testing. Therefore, the trial court’s order must be reversed and

remanded for the entry of an order consistent with this opinion.

 REVERSED AND REMANDED.

 Judges ELMORE concurs.

 Judge ARROWOOD dissents with separate opinion.

 - 19 -
 No. COA18-250 – State v. Byers

 ARROWOOD, Judge, dissenting.

 I respectfully dissent. I would hold the trial court did not err by denying

defendant’s motion for DNA testing because the allegations in his motion were not

sufficient to establish that he was entitled to the appointment of counsel.

 “In reviewing a denial of a motion for postconviction DNA testing, findings of

fact are binding on this Court if they are supported by competent evidence and may

not be disturbed absent an abuse of discretion. The lower court’s conclusions of law

are reviewed de novo.” State v. Lane, 370 N.C. 508, 517, 809 S.E.2d 568, 574 (2018)

(citation, internal quotation marks, and alteration omitted). The movant “has the

burden of proving by a preponderance of the evidence every fact essential to support

the motion for postconviction DNA testing, which includes the facts necessary to

establish materiality.” Id. at 518, 809 S.E.2d at 574 (internal quotation marks and

citations omitted).

 N.C. Gen. Stat. § 15A-269 (2017) provides, in relevant part:

 (a) A defendant may make a motion before the trial court
 that entered the judgment of conviction against the
 defendant for performance of DNA testing . . . if the
 biological evidence meets all of the following conditions:

 (1) Is material to the defendant’s defense.

 (2) Is related to the investigation or prosecution that
 resulted in the judgment.

 (3) Meets either of the following conditions:

 a. It was not DNA tested previously.
 STATE V. BYERS

 ARROWOOD, J., dissenting.

 b. It was tested previously, but the requested
 DNA test would provide results that are
 significantly more accurate and probative
 of the identity of the perpetrator or
 accomplice or have a reasonable
 probability of contradicting prior test
 results.

 (b) The court shall grant the motion for DNA testing . . .
 upon its determination that:

 (1) The conditions set forth in subdivisions (1), (2), and
 (3) of subsection (a) of this section have been met;

 (2) If the DNA testing being requested had been
 conducted on the evidence, there exists a reasonable
 probability that the verdict would have been more
 favorable to the defendant; and

 (3) The defendant has signed a sworn affidavit of
 innocence.

 ....

 (c) . . . [T]he court shall appoint counsel for the person who
 brings a motion under this section if that person is
 indigent. If the petitioner has filed pro se, the court
 shall appoint counsel for the petitioner . . . upon a
 showing that the DNA testing may be material to the
 petitioner’s claim of wrongful conviction.

N.C. Gen. Stat. § 15A-269. “Thus, to be entitled to counsel, defendant must first

establish that (1) he is indigent and (2) DNA testing may be material to his wrongful

conviction claim.” State v. Cox, 245 N.C. App. 307, 312, 781 S.E.2d 865, 868 (2016)

(citation omitted). The materiality showing required under N.C. Gen. Stat.

 2
 STATE V. BYERS

 ARROWOOD, J., dissenting.

§ 15A-269(c) is no less demanding than under (a)(1). State v. Gardner, 227 N.C. App.

364, 368, 742 S.E.2d 352, 355 (2013). Our Supreme Court has previously determined

that, in this context, “material means there is a reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would have been

different.” Lane, 370 N.C. at 519, 809 S.E.2d at 575 (citation and internal quotation

marks omitted).

 Whether a “defendant’s request for postconviction DNA testing is ‘material’ to

his defense, as defined in N.C. [Gen. Stat.] § 15A-269(b)(2), is a conclusion of law”

that we review de novo on appeal. Id. at 517-18, 809 S.E.2d at 574. To allege that

the requested DNA would be material, a “defendant must provide specific reasons

that the requested DNA test would be significantly more accurate and probative of

the identity of the perpetrator or accomplice or that there is a reasonable probability

of contradicting the previous test results.” Cox, 245 N.C. App. at 312, 781 S.E.2d at

869 (citation and internal quotation marks omitted). Our determination as to

whether the request is material to a defendant’s defense must be based on “the

context of the entire record, and hinges upon whether the evidence would have

affected the jury’s deliberations.” Lane, 370 N.C. at 519, 809 S.E.2d at 575 (internal

citation and quotation marks omitted).

 Here, defendant’s motion alleges: (1) his theory at trial was that someone else

committed the crimes; (2) the State’s failure to test the blood on both his and the

 3
 STATE V. BYERS

 ARROWOOD, J., dissenting.

victim’s clothes deprived him of a fair trial because testing the clothes would reveal

the identity of this person he claims murdered the victim; and (3) the perpetrator’s

blood will be on the clothes because the perpetrator fought both defendant and the

victim on the night of the victim’s murder.

 In light of the context of the entire record, I disagree with the majority that

these allegations were sufficient to establish materiality, and agree with the trial

court that defendant “failed to show how conducting additional DNA testing is

material to his defense.” The insufficiency of these allegations is demonstrated by

our Supreme Court’s recent decision in Lane.

 In Lane, our Supreme Court considered whether a trial court improperly

denied a defendant’s motion for postconviction DNA testing of hair samples because

defendant failed “to show that the requested postconviction DNA testing of hair

samples is material to his defense[.]” Lane, 370 N.C. at 516, 809 S.E.2d at 574

(internal quotation marks omitted). The court concluded that the defendant could

not establish materiality because of the “overwhelming evidence of defendant’s guilt

presented at trial, the dearth of evidence at trial pointing to a second perpetrator,

and the inability of forensic testing to determine whether the hair samples at issue

are relevant to establish a third party was involved in these crimes together[.]” Id.

at 520, 809 S.E.2d at 576. This evidence that the defendant in Lane raped, sodomized,

and murdered the victim included a confession by defendant, which never mentioned

 4
 STATE V. BYERS

 ARROWOOD, J., dissenting.

a second perpetrator, eyewitness testimony, and forensic testing that revealed a “hair

was found in [the victim’s] anal canal . . . could not” rule out defendant “as the source

of the hair.” Id. at 520-21, 809 S.E.2d at 576. The State’s evidence also included

forensic evidence that:

 the trash bag in which [the victim] was found was
 consistent with the size, composition, construction, texture,
 red drawstrings, and reinforcement characteristics of the
 trash bags found in defendant’s home. Fibers from a blue
 tarp and a roll of duct tape also found at defendant’s home
 were consistent with the tarp and duct tape found near the
 location where [the victim’s] body was found. Fourteen
 hairs consistent with the victim’s head hairs were found in
 defendant’s vacuum cleaner and carpet sample, confirming
 [the victim] was in defendant’s home, and these hairs
 exhibited signs of being cut, confirming [the victim] was
 subjected to some kind of force.

Id. at 521, 809 S.E.2d at 576.

 Here, as described by the majority, defendant was convicted of first degree

burglary and first degree murder on 3 March 2004. State v. Byers, 175 N.C. App. 280,

282, 623 S.E.2d 357, 358 (2006). The State’s evidence of defendant’s guilt was

extensive. The State’s witness Reginald Williams testified that he visited the victim

on the night of her murder. Id. at 283, 623 S.E.2d at 359. “Shortly after 9:00 p.m.,

they heard a crash at the back door[,]” so the victim “went to the back door and started

yelling ‘Terraine, stop.’ ” Id. Williams feared for his life, so he ran out the front door

and located a bus driver, who called 911 for him. Id. Williams testified that the

victim feared defendant and was afraid he was going to do something to hurt her. Id.

 5
 STATE V. BYERS

 ARROWOOD, J., dissenting.

He also testified that the victim “previously had allowed him to listen to telephone

messages left for her by defendant, her ex-boyfriend. In one message, defendant

stated he thought [the victim] was messing with somebody ‘and when he found out

who it was, he was gonna kill them[,]’ ” which is why the witness fled. Id.

 Additionally, one of the victim’s neighbors testified that she observed

defendant near the back door of the victim’s apartment around 8:00 p.m., and police

observed defendant coming out of the victim’s apartment through a broken window

in a door when they arrived on the scene. Id. Defendant told the officers “that a

female lay inside the apartment, and she was hurt. While speaking, he turned, re-

entered the apartment” and attempted to flee. Id.

 An officer testified he had responded to a domestic call at the victim’s residence

twice in the eleven days prior to the murder because defendant had been released

from jail after being locked up for domestic violence and had “returned to bother” the

victim. Id. Additional officers testified to prior incidents of domestic violence

involving defendant and the victim. Id. at 283, 623 S.E.2d at 359-60.

 During the trial, the State presented DNA evidence analyzing

 fingernail scrapings from defendant’s hands; a blood stain
 from a couch cushion; a swab from a knife; a swab from a
 knife blade; and blood stains from various places in the
 apartment, including the upper handrail of the stairway.
 The fingernail scrapings from defendant’s right hand
 contained a mixture of DNA from the victim and defendant,
 with the majority contributed by defendant. The left
 fingernail scrapings taken from defendant revealed the

 6
 STATE V. BYERS

 ARROWOOD, J., dissenting.

 victim contributed the majority of the DNA in the sample.
 The DNA in the blood stain on the upper handrail and the
 couch matched defendant’s. The DNA in the blood stains
 from the knife and the knife blade matched the victim.

Id. at 285, 623 S.E.2d at 360. Although the blood on defendant’s clothing did not

undergo DNA testing, defendant stipulated at trial that it was the victim’s blood on

the clothing.

 In contrast, defendant did not present any evidence at trial. Id. at 285, 623

S.E.2d at 360. Furthermore, the record before us, beyond the motion’s allegations,

does not support his claim that defendant presented a defense at trial that there was

a second perpetrator, or his allegations that he made specific statements about a

second perpetrator at the scene. I do note that the record contains a narrative report

from reporting officer Jeff R. Shelton that upon his arrival to the crime scene he saw

defendant exiting the back door of the victim’s apartment and he told the officers

“there was someone else inside” before he fled from the officers, however, I do not

think this is enough evidence to support defendant’s allegation that he has

maintained there was a second perpetrator.

 Thus, in light of the overwhelming evidence of defendant’s guilt and dearth of

evidence pointing to a second perpetrator, defendant did not meet his burden to prove

by a preponderance of the evidence every fact necessary to establish materiality, and

the trial evidence was sufficient to dictate the trial court’s ultimate conclusion on

materiality, as in Lane. Accordingly, I would hold that no reasonable probability

 7
 STATE V. BYERS

 ARROWOOD, J., dissenting.

exists under the facts of this case that a jury would fail to convict defendant and that

the trial court did not err by concluding defendant failed to establish materiality.

 Because defendant failed to meet his burden of showing materiality, I need not

address whether the trial court erred by denying his motion for DNA testing prior to

an inventory under N.C. Gen. Stat. § 15A-269(f) (2017). See State v. Tilghman, No.

COA17-1308, __ N.C. App. __, __, __ S.E.2d __, __, 2018 WL 4700630, slip op. at 11

(N.C. Ct. App. Oct. 2, 2018) (“Defendant failed to meet his burden of showing

materiality. Accordingly, the trial did not err by denying his motion for DNA testing

prior to an inventory under N.C. Gen. Stat. § 15A-269(f).”).

 8